**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LARRY WADDELL,

　　　　　　*Petitioner-Appellant,*

v.

DEPARTMENT OF CORRECTION;
REUBEN FRANKLIN YOUNG; HERBERT
JACKSON,

　　　　　　*Respondents-Appellees.*

No. 11-7234

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Max O. Cogburn, Jr., District Judge.
(3:10-cv-00532-MOC-DSC)

Argued: March 23, 2012

Decided: May 25, 2012

Before NIEMEYER, KING, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Niemeyer and Judge Agee joined.

**COUNSEL**

**ARGUED:** Sarah Jessica Farber, NORTH CAROLINA PRISONER LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellant. Mary Carla Hollis, Clarence Joe Del-Forge, III, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Vernetta Alston, Mary S. Pollard, NORTH CAROLINA PRISONER LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellant. Roy Cooper, Attorney General, Raleigh, North Carolina for Appellees.

**OPINION**

KING, Circuit Judge:

In 1975, petitioner Larry Waddell was convicted of first-degree murder in the Superior Court of Mecklenburg County, North Carolina, and sentenced to be executed. His death sentence was vacated by the Supreme Court of the United States in 1976, and later that year Waddell was resentenced to life imprisonment. In 2010, Waddell sought habeas corpus relief in the Western District of North Carolina pursuant to 28 U.S.C. § 2254, maintaining that the North Carolina Department of Correction (the "DOC") had improperly excluded "good time" credits in calculating his unconditional release date. As a result, he contends that his continuing detention by the State violates the due process and ex post facto clauses of the Constitution. On September 6, 2011, the district court ruled that Waddell's § 2254 petition was time-barred, and, in the alternative, denied the petition on its merits. *See Waddell v. Keller*, No. 3:10-cv-00532, slip op. at 24-25 (W.D.N.C. Sept. 6, 2011) (the "Opinion").[1] Waddell appeals from the judgment, and, as explained below, we affirm.

---

[1] In his habeas corpus petition, Waddell alleged that the district court possessed authority to grant relief under 28 U.S.C. § 2254 and § 2241(c)(3). The court's Opinion addressed § 2254 only, and Waddell has abandoned any claims for relief under § 2241. The Opinion is found at J.A. 889. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

## I.

On October 22, 2010, Waddell filed his § 2254 petition in the Western District of North Carolina. Waddell's constitutional claims arise from the application of a North Carolina statute that was enacted and then swiftly repealed more than thirty-five years ago. Analogous claims have been recently litigated in the North Carolina courts by similarly situated state prisoners, resulting in relevant state court decisions. In order to understand the contours of Waddell's claims, we review the procedural background of his life sentence and the pertinent North Carolina precedents.

## A.

Following Waddell's March 1975 conviction of first-degree murder, he was sentenced to be executed pursuant to a 1974 revision to North Carolina's murder statute that made the death penalty the mandatory sentence for a first-degree offense. In July 1976, however, the Supreme Court of the United States ruled that the statute, as revised, contravened the Eighth and Fourteenth Amendments. *See Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Pursuant to *Woodson*, the Court then granted Waddell's request for certiorari and held that "[t]he imposition and carrying out of the death penalty in [Waddell's] case constitutes cruel and unusual punishment." *Waddell v. North Carolina*, 428 U.S. 904 (1976). Waddell's death sentence was thus vacated and his case remanded to the courts of North Carolina for further sentencing proceedings.

On remand, Waddell was resentenced to life imprisonment, and that sentence is challenged in these proceedings. When Waddell's life sentence was imposed in 1976, the pertinent state statute provided that "[a] sentence of life imprisonment shall be considered as a sentence of imprisonment for a term of 80 years in the State's prison." N.C. Gen. Stat. § 14-2 (1974) (the "eighty-year rule"). The eighty-year rule was

enacted in 1974, but was repealed in 1977. Waddell thus counts himself among a small group of North Carolina prisoners who were sentenced to life in prison during the three-year existence of the eighty-year rule — between April 8, 1974, and June 30, 1977.

## B.

### 1.

At all relevant times, DOC policy rewarded certain prisoners with sentencing credits — what we refer to in the aggregate as "good time" credits — on the bases of good behavior and productivity.[2] Notably, the DOC has historically recorded the "release date" of a life sentence prisoner as, for example, "99999999," "99999998," "LIFE," or by another term that does not signify a release date. Such release date entries have never been adjusted to reflect an application of good time

---

[2]North Carolina General Statute § 148-11 obligates the DOC to "adopt rules for the government of the State prison system." Section 148-13 authorizes the prison system to reward prisoners with allowances of several categories of sentencing credits. The relevant DOC regulations established the rules and methods for computing such credits, in part, as follows:

- "Good time" is credit awarded to inmates at the rate of one day deducted from their prison term for each day spent in custody without a violation of inmate conduct rules;

- "Gain time" and "earned time" are credits awarded to inmates for their participation in full time work and/or program activities; and

- "Meritorious time" is credit awarded to inmates for their exemplary acts; for working under emergency conditions, working overtime, working in inclement weather; and for achievements in apprenticeship training, education, and other type programs.

*See* 5 N.C. Admin. Code 2B.0110-.0114 (repealed); J.A. 102-11. The distinctions between these types of credits, which we collectively term "good time" credits, is not relevant to Waddell's constitutional claims.

credits as they were earned. Although North Carolina prisoners serving life sentences accrued good time credits, the DOC applied those credits only to the calculation of parole eligibility and custody grade. The DOC's monitoring of good time credits also ensured that such credits could be applied to a prisoner's release date if the Governor commuted a life sentence to a term of years.

In 2005, North Carolina prisoner Bobby Bowden, one of the eighty-year rule group (having been convicted of first-degree murder and sentenced to life in 1976), filed a request for post-conviction relief in the Superior Court of Cumberland County. Bowden contended that, when his good time credits were properly taken into account under the eighty-year rule, he had completed his life sentence. His request for relief was denied by the superior court on August 27, 2007. In 2008, the North Carolina Court of Appeals, treating Bowden's request as a motion for appropriate relief (an "MAR"), reversed the superior court and ruled that the eighty-year rule requires a life sentence to be treated as an eighty-year sentence for all purposes. *See State v. Bowden*, 668 S.E.2d 107, 109-10 (N.C. Ct. App. 2008).[3] The court of appeals then remanded Bowden's case "for a hearing to determine how many sentence reduction credits defendant is eligible to receive and how those credits are to be applied." *Id.* at 110. The Supreme Court of North Carolina initially granted the State's petition for certiorari on the court of appeals's decision. *See State v. Bowden*, 677 S.E.2d 161 (N.C. 2009). On October 9, 2009, however, the supreme court determined that certiorari had been improvidently awarded, and the State's appeal was dismissed. *See State v. Bowden*, 683 S.E.2d 208 (N.C. 2009).

---

[3]A defendant convicted of a crime in North Carolina is entitled to seek post-conviction relief by way of an MAR. *See* N.C. Gen. Stat. § 15A-1401. An MAR is not identical to habeas corpus, but it provides an avenue to obtain relief from "errors committed in criminal trials and proceedings." *Id.*

Pursuant to *Bowden*, the DOC calculated the tentative release dates resulting from good time credits of North Carolina prisoners who had been sentenced to life for murder and rape offenses committed during the viable period of the eighty-year rule. Those release dates were necessarily tentative, in that the DOC was yet unsure whether good time credits were legally applicable to eighty-year rule sentences. According to former DOC Secretary Alvin Keller — testifying in a related case — the release date calculations were made on the possibility that the DOC would be obliged to release certain of those prisoners pursuant to the court of appeals's *Bowden* mandate, which was to issue on October 29, 2009 (twenty days after the supreme court declined review). *See* J.A. 282-84.[4] In so doing, the DOC identified twenty prisoners (the "qualified prisoners") whose tentative release dates had been satisfied when the *Bowden* mandate issued. Thus, while also pursuing its legal alternatives with respect to *Bowden*, the DOC prepared for possible release of the qualified prisoners on October 29, 2009.

Petitioner Waddell was not among the twenty qualified prisoners. When his good time credits were tentatively calculated under the eighty-year rule, Waddell received a potential release date of January 22, 2010. *See* J.A. 119.

2.

Prior to October 29, 2009, the Governor urged the DOC not to authorize release of the qualified prisoners, and informed the public that those prisoners would not be released until "new legal issues have been resolved by the courts." J.A. 143. The qualified prisoners were not released and, on November

---

[4]Secretary Keller was a named respondent in the district court proceedings. Reuben Young, as Secretary of the Department of Public Safety, has since been substituted for Keller because of a DOC reorganization. For continuity and clarity, we refer to the parties as they existed in the district court.

10, 2009, the Secretary of Correction directed that any prisoner sentenced to life under the eighty-year rule would be given an unconditional release date that was eighty years from his date of conviction, without taking into account any good time credits. As a result, Waddell received a release date of October 31, 2054.

Following the Secretary's decision, several of the qualified prisoners initiated state post-conviction proceedings contesting their newly calculated release dates, contending that their good time credits had not been properly applied. Among the qualified prisoners who pursued such relief were Alford Jones (sentenced to life in 1976), Faye Brown (sentenced to life in 1977), and Wilbur William Folston, Jr. (sentenced to life in 1977). The courts handling those proceedings conducted evidentiary hearings in late 2009. Jones and Brown were granted relief by their respective superior courts, which ordered, pursuant to *Bowden*, that they be unconditionally released. Folston, however, was denied relief by the superior court. These conflicting rulings were reviewed in 2010 by the Supreme Court of North Carolina.

## C.

### 1.

On August 27, 2010, the Supreme Court of North Carolina resolved the conflicting superior court rulings, upholding the DOC's decision on the application of good time credits for the qualified prisoners. *See Jones v. Keller*, 698 S.E.2d 49 (N.C. 2010). The *Jones* decision relied on North Carolina General Statute § 148-11, which delegates the administration of prison sentences to the DOC, and renders the rules and regulations regarding good time credits "'strictly administrative and not judicial.'" *Id.* at 53-54 (quoting *State v. Garris*, 144 S.E.2d 901, 902 (N.C. 1965)). Relying on the doctrine of separation of powers, the *Jones* court recognized that it "has long held that when an agency of another branch of government is

authorized to exercise regulatory power over the administration of prison sentences, we will defer to that authority to the extent the delegation is constitutional." *Jones*, 698 S.E.2d at 53. The court further observed that "as a general rule, the judiciary will not review the DOC's grant, forfeiture, or application of credits against a prisoner's sentence." *Id.* at 54. The *Jones* court thus ruled that the DOC's decision on how to apply good time credits was within its statutory authority, concluding that, "implicit in DOC's power to allow time for good behavior under section 148-13 is authority to determine the purposes for which that time is allowed." *Id.* at 55.

2.

Turning to whether the DOC's interpretation and implementation of its regulations presented constitutional problems, North Carolina's high court addressed Jones's contentions of due process, equal protection, and ex post facto violations. The *Jones* decision first emphasized that prisoner benefits arise from state-created liberty interests through the enactment of statutes. *See* 698 S.E.2d at 55. Because the North Carolina legislature had created a right to good time credits, that right is protected under the Fourteenth Amendment. *Id.* at 55-56. The State is entitled, however, "within reasonable and constitutional limits, [to] control the contours of the liberty interest it creates." *Id.* at 56. The court observed that Jones had received his good time credits — which had been used to move him to the "least restrictive custody grade" and to calculate his parole eligibility date. *Id.* at 54.

Jones's argument for relief in his state post-conviction proceedings, however, was that good time credits should also have been applied to calculate his unconditional release date, thus substantially reducing his eighty-year rule sentence. *See Jones*, 698 S.E.2d at 56. The *Jones* court rejected that contention, ruling that Jones's liberty interest in having such credits utilized for calculating an unconditional release date is a de minimus one. *Id.* Relying on decisions of the Supreme Court

of the United States regarding the liberty interests of prisoners, the state supreme court decided that the administration of sentence reduction credits implicates a lesser liberty interest than policies and regulations designed to restrict or revoke an individual's liberty, such as parole revocation. *Id.* (citing *Sandin v. Conner*, 515 U.S. 472 (1995); *Hewitt v. Helms*, 459 U.S. 460 (1983), *abrogated in part on other grounds by Sandin*; *Wolff v. McDonnell*, 418 U.S. 539 (1974)). The *Jones* court explained that

> Jones's liberty interest in good time [credits] is limited. Thus, his liberty interest, if any, in having these credits used for the purpose of calculating his date of unconditional release is de minimis, particularly when contrasted with the State's compelling interest in keeping inmates incarcerated until they can be released with safety to themselves and to the public.

*Id.* North Carolina's compelling interest in ensuring public safety, the *Jones* decision explained, outweighed Jones's de minimis interest in applying his good time credits to the establishment of his unconditional release date. *Id.*

With specific relevance to the issue in this appeal, the *Jones* decision observed that "[n]o regulation explicitly provides that credits are to be used to calculate an unconditional release date, and DOC asserts that it never considered that these regulations applied to Jones or other inmates similarly situated for the purpose of calculating an unconditional release date." 698 S.E.2d at 57. Thus, the court determined that good time credits had been applied properly to establish Jones's parole date, and concluded that,

> [i]n light of the compelling State interest in maintaining public safety, . . . these regulations do not require that DOC apply time credits for purposes of unconditional release to those who committed first-degree murder during the 8 April 1974 through 30

June 1978 time frame and were sentenced to life imprisonment.

*Id.*

The *Jones* court then rejected Jones's ex post facto constitutional contention. In so ruling, it explained that the state constitution bars the adoption of retrospective laws that alter the punishment of — or punish to a greater degree — a crime that was committed before the law was enacted. *Jones*, 698 S.E.2d at 57. Because Jones had failed to identify any legislation or regulations that had altered his award of good time credits, the court determined that he had not suffered an ex post facto injury. *Id.*[5]

3.

Having resolved Jones's constitutional contentions, the Supreme Court of North Carolina reversed the superior court's award of relief and held that Jones was legally incarcerated in the state prison system. *Jones*, 698 S.E.2d at 58. Thereafter, on August 27, 2010, the supreme court also reversed the superior court's award of relief to Faye Brown, "[f]or the reasons stated in [*Jones*.]" *Brown v. N.C. Dep't of Corr.*, 697 S.E.2d 327 (N.C. 2010).

---

[5]Finally, addressing Jones's contention that the DOC's failure to apply his good time credits to the calculation of his unconditional release date contravenes his federally protected equal protection rights, the *Jones* decision identified a rational basis for treating Jones differently than certain other state prisoners. *See* 698 S.E.2d at 58. Put succinctly, the court determined that Jones was convicted of a different crime — first-degree murder — than other prisoners serving sentences for terms of years. *Id.* Thus, Jones and those prisoners similarly situated present a greater threat to society. *Id.* There is no equal protection issue pursued in this appeal.

## D.

### 1.

In Waddell's 28 U.S.C. § 2254 petition, he maintains that the *Jones* decision is erroneous and that his federally protected constitutional rights — due process and ex post facto — must be vindicated. By its Opinion, the district court first decided that Waddell's claims for habeas corpus relief were time-barred. *See* Opinion 9.[6] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996, subjects § 2254 petitions of state prisoners to a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). More specifically, AEDPA authorizes such prisoners one additional year after its enactment, until April 24, 1997, to timely file federal habeas claims that arose prior to AEDPA's enactment. The district court decided that the applicable statute of limitations in Waddell's case is found in § 2244(d)(1)(D), and that the factual predicate to his claims were available to him long before AEDPA was enacted. *See* Opinion 8-9.[7] The court thus held that Waddell's § 2254

---

[6]Upon filing his § 2254 petition in district court, Waddell also filed a habeas corpus petition in the Supreme Court of North Carolina, seeking to ensure, in his terms, "that his federal habeas claims are not procedurally defaulted." *See* Opinion 5. On November 4, 2010, the state supreme court summarily denied Waddell's state habeas petition. *See Waddell v. Keller*, 705 S.E.2d 342 (N.C. 2010). In its Opinion, the district court related that the State conceded that Waddell complied with the exhaustion mandate of § 2254(b)(1), and recognized the *Jones* decision as the implicit basis of the state supreme court's denial of Waddell's state habeas petition. The State presents no issue in this appeal with respect to exhaustion.

[7]AEDPA amended 28 U.S.C. § 2244(d)(1) to create a one-year statute of limitations, providing in pertinent part:

> (d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from

> * * *

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(D).

habeas petition, filed on October 22, 2010, was at least thirteen years late and time-barred. The Opinion explained that, "[b]y not filing this claim with this court on or before April 24, 1997, the claim is barred and no adequate reason has been provided to otherwise toll the operation of the statute of limitations." *Id.* at 9.

2.

Despite deeming Waddell's habeas claims to be time-barred, the district court addressed their merits. In doing so, the court first determined that the proceedings in *Jones* and *Brown* rendered an evidentiary hearing unnecessary on Waddell's § 2254 petition. *See* Opinion 9-10. The court then properly recognized that, in light of the *Jones* decision, the issue was "'not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Id.* at 13 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). The court further explained that, "[t]o the extent petitioner is basing his first contention on an alleged violation of state regulatory procedure, state law, or the separation of powers doctrine, or any provision of the North Carolina Constitution, such contention is not cognizable on federal habeas review." *Id.* at 14.

By its Opinion, the district court ruled that the *Jones* decision had reasonably determined that the DOC's plan for application of good time credits was within its statutory authority, and that Waddell did not earn credits "without reservation or restriction." Opinion 14-15. Because the DOC had never applied good time credits to Waddell's unconditional release date, the court observed, he "had no legitimate expectation that he would be unconditionally released any time sooner than eighty years minus credit for any pre-trial confinement; equally, he has no viable argument under federal law that respondents took away any liberty interest without Due Process of law." *Id.* at 18-19.

The district court also ruled that *Jones* had not unreasonably determined that there was no ex post facto violation, in that the application of Waddell's good time credits had never changed. The court elaborated:

> Here, the North Carolina legislature has not enacted a statute requiring DOC to apply a prisoner's accumulated good time, gain time, or merit time credits to reduce an unconditional release date on a life sentence. The undisputed record shows that such credits have never been applied to reduce petitioner's life sentence, he has not been released, and no statute has been enacted cancelling any credits he already received.

Opinion 21.

The district court denied Waddell's § 2254 claims to relief, ruling that the *Jones* decision satisfied the AEDPA requirements. The district court then issued a certificate of appealability, pursuant to 28 U.S.C. § 2253(c), and Waddell has filed a timely notice of appeal. We possess jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c).

## II.

We review de novo a district court's denial of habeas corpus relief. *See DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011). When habeas corpus claims have been adjudicated on the merits by the state court, however, we may not grant relief unless

> the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."

*Lewis v. Wheeler*, 609 F.3d 291, 300 (4th Cir. 2010) (quoting 28 U.S.C. § 2254(d)). As the Supreme Court has recognized with respect to AEDPA:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The Court recently elaborated on the concept of AEDPA deference by explaining: "This is a 'difficult to meet' and 'highly deferential standard' for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citations omitted).

### III.

On appeal, Waddell maintains that the district court erred in its rulings on the statute of limitations issue and on the merits of his claims. First, he asserts that his 28 U.S.C. § 2254 petition is not time-barred because the factual predicate of his constitutional claims did not arise until October 29, 2009, when the DOC failed to release him from prison. Second, on the merits, Waddell admits that the DOC always recorded his sentence as though he had received an indeterminate life sentence, instead of a life sentence that, under the eighty-year

rule, was deemed to be eighty years. *See* Br. of Appellant 4-5. Waddell asserts, however, that the DOC's failure to record his sentence as a term of years, periodically reduced by the application of good time credits, is an error leading to his current unlawful incarceration.

Recognizing that *Jones* is the controlling state court authority on this issue, Waddell maintains that the *Jones* decision was contrary to, and involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Because *Jones* was the implicit basis for the state supreme court's denial of Waddell's state habeas petition, *see supra* note 6, Waddell has properly formulated his AEDPA obligations. More specifically, Waddell contends that the *Jones* court disregarded applicable due process jurisprudence when it deferred to the DOC's position that life sentences under the eighty-year rule are indefinite sentences. Waddell also contends that the *Jones* court erred in its application of the Supreme Court's ex post facto principles, maintaining that the DOC retroactively deprived him of the right to use good time credits to calculate his unconditional release date.

A.

We first assess the district court's ruling that Waddell's § 2254 claims are time-barred. In that respect, Waddell contends that the factual predicate of his claims is "the DOC's failure to release [him] from prison on [October 29, 2009,]" and that fact was not available to him prior to that date. Br. of Appellant 10. In support of that proposition, Waddell argues that, because his good time credits were earned prior to the enactment of AEDPA, he was not on notice "that he should have been able to file his claim one year following the enactment of AEDPA." *Id.* at 13.

There is a fundamental factual error in Waddell's contention that he was slated to be released on October 29, 2009. On

this record, Waddell's tentative release date, after applying his good time credits, was calculated by the DOC as January 22, 2010, pursuant to the now-superseded *Bowden* decision.[8] Thus, the factual predicate of Waddell's claim could not have been "the DOC's failure to release Mr. Waddell from prison" on October 29, 2009.

Importantly, Waddell's correct release date on the DOC records has never reflected a reduced sentence with the application of good time credits. After Waddell was sentenced to life under the eighty-year rule, his projected release date was initially recorded in the DOC records as "1/2/9999," and that date was officially revised in 2009 to "10/31/2054." J.A. 119, 100. Although Waddell maintains that good time credits should have been used to reduce his release date, the DOC has never used such credits to reduce a life sentence, regardless of whether a prisoner falls within the eighty-year rule. Thus, the factual predicate of the constitutional claims in Waddell's § 2254 petition — and being pursued in this appeal — was available to him prior to April 24, 1997. Under AEDPA, Waddell was last authorized to pursue a § 2254 habeas corpus claim on that date.

It is possible, however, to construe Waddell's limitations argument as being that the factual predicate of his constitutional claims is the DOC's failure to release the qualified prisoners on October 29, 2009, notwithstanding his erroneous

---

[8]Notably, the State suggests that Waddell's tentative release date was June 25, 2008, and that he was among the qualified prisoners that should have been released, under the *Bowden* decision, on October 29, 2009. *See* Br. of Appellee 4. There is no record support, however, for the proposition that Waddell's release date was ever tentatively calculated as June 25, 2008. *See* J.A. 119; *id.* at 126-28 (October 16, 2009 newspaper article naming the twenty inmates — not including Waddell — to be released on October 29, 2009). The date of June 25, 2008 is reflected in the Joint Appendix as the tentative release date of a prisoner named Willard Warren — but no one else. *See id.* at 119; *see also Warren v. Keller*, No. 10-247, 2011 WL 4804370 (W.D.N.C. Oct. 11, 2011).

assertion that he was among that group of prisoners. On October 29, 2009, Waddell was plainly on notice that the DOC would treat him like the qualified prisoners and decline to apply good time credits to his release date. In these circumstances, we are inclined to agree with the district court that "neither the factual predicate nor the operative constitutional rights were unavailable to [Waddell] before the decision in Bowden." Opinion 9. However, inasmuch as the statute of limitations question is arguably more difficult than the merits issues, we are content to assume without deciding that Waddell's claims are not time-barred and proceed with our analysis of their merits. *See Bauberger v. Haynes*, 632 F.3d 100, 103 (4th Cir. 2011) (assuming without deciding that habeas corpus claim satisfied AEDPA threshold demands in order to "avoid wasting the parties' and the courts' limited resources on questions that have no effect on the outcome of the case" (internal quotation marks omitted)).

B.

Because Waddell's § 2254 claims are identical to two of those disposed of in *Jones v. Keller*, the *Jones* decision — on which the denial of Waddell's state habeas petition was obviously based — constitutes a determination of those claims by the Supreme Court of North Carolina. And we may only assess those claims through the lens of § 2254(d). As a result, we are not entitled to grant relief unless the *Jones* decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Harrington v. Richter*, 131 S. Ct. 770, 784 (2011) (observing that "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning").

Importantly, we review § 2254 claims for violations of federal law only, inasmuch as "federal habeas corpus relief does

not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Thus, we are not entitled to decide whether the DOC's actions fall within the statutory authority delegated to it under North Carolina law, but only whether the DOC's refusal to apply Waddell's good time credits to reduce his life sentence violated the due process clause or the ex post facto clause of the Constitution.

1.

First, the *Jones* court ruled that Jones's continued incarceration did not contravene his due process rights under the Constitution of the United States. Waddell's challenge to that ruling relies on the premise that the DOC awarded Waddell good time credits that reduced his life sentence, and thereafter deprived him of those credits without the minimum procedures necessary to satisfy his due process guarantees. Waddell's contention in this regard is flawed in at least two material respects. That is, his factual premise is incorrect, and Supreme Court precedent does not support his contention.

Supreme Court precedent speaks directly to the due process issue as it relates to good time credits. The Court held in 1974 that a prisoner's interest in good time credits has substance, and that due process requires that such a right not be "arbitrarily abrogated." *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Thus, *Wolff* recognized that after a prisoner has earned good time credits under a state statute that awards mandatory sentence reductions for good behavior, he possesses a liberty interest in a reduced sentence, which cannot be revoked in the absence of minimum procedural guarantees. *Id.* at 556. In Waddell's case, however, there was nothing arbitrary about the DOC's failure to apply good time credits to reduce his life sentence, and nothing that was rightfully his was abrogated. As the *Jones* decision explains, the DOC has never used good time credits for the purpose of reducing a life sentence. *See Jones*, 698 S.E.2d at 56-57. On this record, the DOC administered good time credits for the purpose of calcu-

lating parole eligibility dates, determining custody grades, and, in the event a life sentence was commuted by the Governor to a term of years, to reduce the sentence accordingly. Because good time credits were never used for the purpose of achieving the relief Waddell seeks, his right to use such credits in that manner could not be abrogated. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11-12 (1979) (observing "difference between losing what one has and not getting what one wants").

Put simply, the DOC's practice of applying earned good time credits for certain identified purposes, but not for the purpose sought by Waddell, does not give rise to a liberty interest protected by the Due Process Clause. *See Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981) (emphasizing that common practice of Board of Prisons was insufficient to create liberty interest where statute neither required nor prohibited such practice). In other words, as explained by North Carolina's highest court in the *Jones* decision, "[b]ecause [Waddell] has received the awards to which he is entitled for the purposes for which he is entitled, he has not been denied credits in which he has a constitutionally protected liberty interest." *Jones*, 698 S.E.2d at 56. As a result, Waddell's liberty interest in good time credits has been sufficiently recognized. His due process claim therefore fails.

2.

Turning to Waddell's second claim, the *Jones* decision determined that there had been no ex post facto violation because no regulatory or legislative enactment had altered Jones's award of good time credits. The ex post facto clause bars a retroactive enactment that increases the punishment for a crime after it has been committed. *See Garner v. Jones*, 529 U.S. 244, 249 (2000). It is settled that "[t]he prohibition against ex post facto laws, which applies only to penal statutes which disadvantage the offender affected by them, assures that innocent conduct is not made criminal after the

fact and that greater punishment is not imposed after the fact." *Jones v. Murray*, 962 F.2d 302, 309 (4th Cir. 1992) (internal quotation marks omitted).

The DOC's failure to utilize Waddell's good time credits to reduce his life sentence under the eighty-year rule did not result from any statutory or regulatory enactment after Waddell's first-degree murder offense. Waddell's argument in this regard is that the DOC's creation of a distinction between good time credits awarded to prisoners serving terms of years and such credits awarded to prisoners serving life sentences under the eighty-year rule "is a post-hoc rationale designed to undercut the legislature's determination that inmates sentenced under § 14-2 had eighty year terms." Br. of Appellant 19. As we have emphasized, however, the DOC has always treated life sentences and sentences for terms of years differently — regardless of whether a sentence was deemed an eighty-year term under § 14-2. The DOC's revision of the release dates of prisoners — such as Waddell — sentenced under the eighty-year rule was simply a correction of its records, and failed to impact on how good time credits were being applied. *See Warren v. Baskerville*, 233 F.3d 204, 207 (4th Cir. 2000) (recognizing that "[a] change in an administrative policy that was in effect at the time of a criminal's underlying offenses does not run afoul of the prohibition against ex post facto laws"); *Stephens v. Thomas*, 19 F.3d 498, 500-01 (10th Cir. 1994) (finding no ex post facto violation when department of corrections fixed erroneous internal practices relating to good time credits, even though change disadvantaged certain prisoners).

Waddell's ex post facto claim has no merit because, as the *Jones* decision explained, no legislative or regulatory enactment ever altered Waddell's award of good time credits. Put simply, Waddell's sentence has been — and remains — life in prison. His current projected release date was calculated pursuant to a short-lived enactment that deemed a "life sentence" to be eighty years. Such a release date calculation is

the product of a legislative enactment and does not guarantee Waddell's release at any time before 2054. Although North Carolina law provided for the award of good time credits, it is for the DOC to determine how those credits are to be applied. *See* N.C. Gen. Stat. § 148-13.

Waddell's § 2254 claims are therefore simply challenges to the State's interpretations of its own statutes and regulations. Put succinctly, the DOC's obligation to keep track of good time credits for purposes of parole eligibility, custody grade, and commutation, and its decision not to utilize them to reduce the release dates of prisoners sentenced under the eighty-year rule, was recognized in the *Jones* decision — by the state's highest court — as a reasonable application of the DOC's authority to administer sentences. Under AEDPA, we are only entitled to assess whether the ex post facto ruling of the *Jones* decision is contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. That inquiry must be, as the district court properly recognized, answered in the negative. The ex post facto claim is therefore also denied.

## IV.

Pursuant to the foregoing, the judgment of the district court is affirmed.

*AFFIRMED*