[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10105

_____

D.C. Docket No. 1:10-cv-00028-WS-M

ROBERT THOMAS MAYS,

Petitioner-Appellant,

versus

CARTER F. DAVENPORT,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(March 27, 2014)

Before HULL and BLACK, Circuit Judges, and SMITH,[*] District Judge.

PER CURIAM:

_____

[*] Honorable C. Lynwood Smith, Jr., United States District Judge for the Northern District of Alabama, sitting by designation.

Robert Thomas Mays, an Alabama prisoner serving a 99-year sentence for murder, appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. After a thorough review of the record and having had the benefit of oral argument, we conclude Mays is not entitled to habeas relief and we therefore affirm the district court's judgment.

## I.  BACKGROUND

The following facts are not in dispute. On Wednesday, February 12, 2003, police officers in Cullman County, Alabama, found Paula Conn, Mays's mother, dead in her home with a gunshot wound under her left eye. Conn had not been seen since Sunday, February 9, 2003. Based on the condition of Conn's body, investigators estimated that she had been dead for 48 to 72 hours, that is, since Sunday, February 9th or Monday, February 10th. While investigating the crime scene, officers noticed that Conn's purse had been rifled through and a brief search indicated that her credit cards and driver's license were missing. During the ensuing investigation, Lieutenant Tim Creel with the Cullman County Sheriff's Office learned that Mays had moved in with his mother several months prior to her death and that Mays regularly used crack cocaine. Lieutenant Creel also learned that Conn had recently purchased a new black Chevrolet pickup truck (the Chevrolet truck) which was not at her home.

2

The next day, Thursday, February 13, 2003, Lieutenant Creel returned to Conn's residence and found photocopies of a driver's license and a credit card as well as old credit card bills. Lieutenant Creel called the credit card company and had Conn's credit card history run. Conn's credit card transaction history revealed that the card had been used in and around the Montgomery area on Monday, February 10th, and Tuesday, February 11th—i.e., two days following her death on February 9th or 10th and two days before her body was discovered on February 12th. Late in the afternoon on February 13, 2003, Lieutenant Creel and another officer, Lieutenant Phillip Lambert, traveled to Montgomery and met with the Montgomery Police Department's robbery and homicide unit. After Detective Guy Naquin with the Montgomery Police Department issued an announcement directing law enforcement officers to be on the lookout for Mays and the Chevrolet truck, an officer spotted the truck at the Peddlers Inn, which is located in an area of town known for its criminal and drug activity.

Upon their arrival at the motel, the officers maintained surveillance on the Chevrolet truck while other officers went to the front desk and looked for Mays's name in the registry. Mays was not a registered guest at the Inn, but the officers learned from a paid informant who worked with Detective Naquin that Mays was currently in room 238. Thereafter, Lieutenants Creel and Lambert went to room 238 along with Detective Naquin and several other officers from the Montgomery

3

Police Department. Someone inside the room opened the door and the officers entered the room.[1] The room smelled as if crack cocaine had recently been smoked.

Inside the motel room, the officers found Mays along with two people who lived in the room: a woman, Angela Lewis, and another man, Joseph Davis. After entering the room, Detective Naquin handcuffed Mays and Lieutenant Creel removed Mays's wallet from his pocket. Lieutenant Creel did not ask Mays anything before removing the wallet. Inside Mays's wallet, Lieutenant Creel found Conn's driver's license.

During an interview with Lieutenant Creel, Lewis and Davis told Creel that they had met Mays that day, and that Mays was trying to sell a truck. Mays had also told Lewis and Davis that his mother was from Cullman and that she was terminally ill with cancer. After they were interviewed, Lewis and Davis were allowed to remain in their room at the Peddlers Inn while Mays was taken to the Montgomery Police Department. Police officers obtained a search warrant for the Chevrolet truck. While searching the truck, an officer with the Cullman County

---

[1] Lieutenant Creel testified that one of the officers knocked on the door while one of the room's occupants, Angela Lewis, testified that she opened the door after hearing someone outside. In the addendum to his § 2254 petition, Mays maintained that the officers came to the motel room and tried to use the manager's key to enter the room but were prevented from doing so by the chain lock on the door. According to Mays, after the officers yelled at the occupants to open the door, Lewis unchained the door and the police kicked it open. We need not reconcile these apparently inconsistent accounts because the precise manner in which the officers gained entry to room 238 is immaterial to our resolution of this appeal.

Sheriff's Office found shotgun shells, including a spent 20-gauge shotgun shell.  A grand jury subsequently issued an indictment charging Mays with murder.

Prior to trial, Mays filed a motion to suppress Conn's driver's license as well as evidence that had been seized from the Chevrolet truck.[2]  The state trial court held a suppression hearing at which Detective Naquin and Lieutenant Creel testified about their investigation and Mays's arrest.  Mays did not testify.[3]  Mays's counsel argued in relevant part that:

> As far as the wallet is concerned the law is very clear, federal and state, that a warrantless search or a warrantless arrest is presumptively unreasonable.  Now, Officer Creel and Officer Naquin have both testified that they didn't have a warrant for Mr. Mays'[s] arrest at the time that they took him into custody, so it is a warrantless arrest.  There is a presumption that's unreasonable and there are exceptions and the State has only talked about two; incident to a lawful arrest and exigent circumstances coupled with probable cause.  It's . . . hard for the Defendant to argue there wouldn't have been exigent circumstance.  But there has to be probable cause as well.

After arguing that the officers did not have probable cause to arrest Mays, counsel maintained that "[t]o find whether Mr. Mays had an expectation of privacy in that hotel room, the Court has to look at how the Alabama courts treat a hotel

---

[2] In the motion to suppress, Mays argued that he was staying at the Peddlers Inn and the officers' warrantless seizure was unreasonable under the Fourth Amendment.  Mays maintained that exigent circumstances did not justify the officers' warrantless entry into the motel room.  Furthermore, although Mays stated he was staying at the motel, he did not state that he was staying in the room where he was seized.  Mays also did not present any testimony or evidence at the suppression hearing or at trial establishing that he was an overnight guest in room 238.

[3] Mays attempted to introduce the testimony of two other officers from the Montgomery Police Department to ascertain why he was not formally arrested for murder at the Peddlers Inn, but the trial court declined to hear the testimony.

compared to a home. And I have a case that I'm going to leave with the Court that a hotel is treated the same as a home. The standing argument on that should be met." In summarizing his argument, Mays's counsel explained, "we contend that due to the fact there was a warrantless arrest made, Mr. Mays had an expectation of privacy in that hotel room and the State has to show probable cause in exigent circumstance and they can't show probable cause. They can't show probable cause." The trial court denied Mays's motion to suppress.

At trial, Angela Lewis testified that she and Davis lived in room 238 at the Peddlers Inn. Lewis explained that she first met Mays on February 12, 2003—the day before he was arrested. On February 12th, Lewis was working at a package store called Cash's. Mays came into the store with a woman whom Lewis knew as Pocahontas. Although Mays and Pocahontas went to Cash's to purchase cigarettes, they ultimately left the store without making the purchase. Lewis did not have any further interactions with Mays until the following day, February 13, 2003. On that day, Lewis was walking across the parking lot of the Peddlers Inn when Mays and Pocahontas stopped and asked Lewis if she wanted to ride with them. Lewis responded in the affirmative and accompanied Mays and Pocahontas while Mays sold the tires on the Chevrolet truck and then purchased crack cocaine. After Lewis smoked some of the crack cocaine, Mays dropped her off at the entrance to the Peddlers Inn. Lewis returned to her room, where Davis was already present.

6

Sometime thereafter, Mays came to room 238 and knocked on the door.  Mays said he was there to get more crack cocaine and asked Lewis to acquire the drugs for him, which she did.

Lewis further testified that she smoked cocaine with Mays in her motel room, and that Mays also asked Davis to get him cocaine.  In addition, Mays asked Lewis to try to sell the Chevrolet truck for $500 and an ounce of crack cocaine.  Lewis made a phone call to try to sell the truck, but the person she called declined to buy the vehicle.  Eventually, after acquiring more cocaine, Lewis heard someone outside repeating her room number.  When she opened the door to see who was outside, the police rushed into the room.  In addition to Lewis's testimony and that of various other witnesses, the State introduced Conn's driver's license into evidence during the trial.  Neither Davis nor Mays testified.

The jury convicted Mays of murder and he was sentenced to 99 years' imprisonment.  The Alabama Court of Criminal Appeals affirmed Mays's conviction on direct appeal and the Alabama Supreme Court denied his petition for a writ of certiorari.

After unsuccessfully pursuing post-conviction relief in the state courts, Mays filed a § 2254 habeas petition in the district court.  Before the State was served with Mays's petition, Mays filed an addendum in which he asserted an illegal arrest claim—specifically, that the police officers had no justification for their

7

warrantless entry into the room at the Peddlers Inn and that the subsequent search, seizure, and introduction of evidence violated his constitutional rights.

A magistrate judge issued a report and recommendation, concluding in relevant part that Mays's § 2254 petition should be dismissed as untimely, or, alternatively, that his illegal arrest claim was barred by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 494 (1976), which held that a state prisoner may not obtain federal habeas relief on a Fourth Amendment claim if he has had a full and fair opportunity to litigate the claim in state court. Over Mays's objections, the district court adopted the magistrate judge's report and recommendation and dismissed the § 2254 petition.

Mays filed a notice of appeal, and this Court granted him a certificate of appealability on three issues:

> (1) Whether the district court erred in finding that Mays's § 2254 petition was untimely filed, and, if not, whether equitable tolling applied?

> (2) If the district court erred in finding that Mays's § 2254 petition was untimely, whether the court also erred in finding that review of [his illegal arrest claim] was precluded by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052, 49 L. Ed. 2d 1067 (1976)?

> (3) If the district court erred in its procedural rulings, whether the state courts'[] denial of [the illegal arrest claim] was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding? *See* 28 U.S.C. § 2254(d); *see also Payton v. New York*,

8

445 U.S. 573, 588-90, 100 S. Ct. 1371, 1381-82, 63 L. Ed. 2d 639 (1980).

## II.  STANDARD OF REVIEW

We review *de novo* the district court's dismissal of a § 2254 petition, *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1009 (11th Cir. 2012), as well as the district court's resolution of legal questions and mixed questions of law and fact, *Brooks v. Comm'r, Ala. Dep't of Corr.*, 719 F.3d 1292, 1299 (11th Cir. 2013).  We may affirm on any ground supported by the record, even if not relied on by the district court.  *Trotter v. Sec'y, Dep't of Corr.*, 535 F.3d 1286, 1291 (11th Cir. 2008); *see also Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1333 (11th Cir. 2013).

## III.  DISCUSSION

As a preliminary matter, although this Court enumerated three issues in Mays's certificate of appealability, we need not attempt to untangle the procedural problems raised by the first two issues because we are certain that, at bottom, Mays is not entitled to federal habeas relief.  *See Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) ("When relief is due to be denied even if claims are not procedurally barred, we can skip over the procedural bar issues, and we have done so in the past.").[4]  That is, assuming without deciding that Mays's § 2254 petition

---

[4] Other circuits have also concluded that a court of appeals may avoid complicated procedural and time-bar issues and proceed directly to the merits of a claim for the sake of

9

was timely, that he sufficiently exhausted his illegal arrest claim, and that review of the claim is not precluded by *Stone*, his petition is due to be denied on the merits, and it is to that issue we turn.

The Fourth Amendment prohibits police officers from entering a home or hotel room to search or seize persons or property without a warrant or without probable cause and exigent circumstances. *Payton v. New York*, 445 U.S. 573, 590 (1980); *Stoner v. California*, 376 U.S. 483, 486 (1964) ("The search of the petitioner's [hotel] room by the police officers was conducted without a warrant of any kind, and it therefore can survive constitutional inhibition only upon a showing that the surrounding facts brought it within one of the exceptions to the rule that a search must rest upon a search warrant." (quotation omitted)); *see also Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) ("As *Payton* makes plain, police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home."); *United States v. Standridge*, 810 F.2d 1034, 1036 (11th Cir. 1987) (stating the Fourth Amendment's warrant requirement "applies to a motel room").

---

judicial economy. *See, e.g.*, *Waddell v. Dep't of Corr.*, 680 F.3d 384, 394 (4th Cir. 2012) ("[I]nasmuch as the statute of limitations question is arguably more difficult than the merits issues, we are content to assume without deciding that Waddell's claims are not time-barred and proceed with our analysis of the merits."); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same.").

The Supreme Court, however, has also held that while "an overnight guest in a home may claim the protection of the Fourth Amendment . . . one who is merely present with the consent of the householder may not." *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).  Thus, a person who is merely present in another's dwelling to engage in a purely commercial transaction such as narcotics trafficking, who is on the premises for a relatively short period of time, and who does not have a previous connection with the householder, has no legitimate expectation of privacy in the premises and a warrantless search does not violate his Fourth Amendment rights. *See id.* at 91.

The record demonstrates Mays was merely present in Lewis's room at the Peddlers Inn and that he did not have a reasonable expectation of privacy implicating the Fourth Amendment.  First, Mays did not have a preexisting connection to Lewis or Davis. *See id.*  Lewis briefly encountered Mays on February 12, 2003, but did not have any sustained interaction with him until the next day, when she accompanied him to sell the tires on the Chevrolet truck and then joined him in smoking crack cocaine for several hours.[5]  Second, Mays was not a registered guest at the motel and he does not allege that he was an overnight guest in Lewis's room or that he stored his possessions in room 238. *See id.* at

---

[5] In his counseled brief on appeal, Mays does not dispute Lewis's version of the events leading up to his arrest.

11

89-90. The record is devoid of any indication that Mays was present in Lewis's room pursuant to the longstanding social custom of spending the night in another's home when it is impossible to sleep in one's own home. *See id.* at 89 (explaining that the Fourth Amendment extends to overnight guests because "hold[ing] that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the every day expectations of privacy we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society" (quotation omitted)).

Third, Mays was in Lewis's room primarily to acquire crack cocaine, which is an essentially commercial transaction. The commercial nature of Mays's visit to the room is further highlighted by Mays's attempt to have Lewis sell the Chevrolet truck on his behalf. It is apparent that, while the motel room was a dwelling place for Lewis and Davis, it was for Mays simply a place to smoke crack cocaine and do business. *See id.* at 90 ("While the apartment was a dwelling place for Thompson, it was for these respondents simply a place to do business."). On this record, Mays had no legitimate expectation of privacy in the place invaded and he cannot claim the protection of the Fourth Amendment. *See id.* at 88.

12

## IV.  CONCLUSION

For the foregoing reasons, Mays is not entitled to federal habeas corpus

relief and we therefore affirm the district court's judgment.

**AFFIRMED.**