PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DOUGLAS WARREN,
            *Petitioner-Appellant,*

v.                                                    No. 99-7230

ALTON BASKERVILLE,
            *Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-99-280-7)

Argued: September 28, 2000

Decided: November 13, 2000

Before WILKINSON, Chief Judge, and WIDENER and
MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Widener and Judge Motz joined.

_____

## COUNSEL

**ARGUED:** Adam Nathan Steinman, Appellate Litigation Program,
GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C.,
for Appellant. Christopher Garrett Hill, Assistant Attorney General,
Criminal Law Division, OFFICE OF THE ATTORNEY GENERAL,
Richmond, Virginia, for Appellee. **ON BRIEF:** Steven H. Goldblatt,
Director, Neil H. Jaffee, Supervising Attorney, Jeffrey E. Palker, Stu-

dent Counsel, Appellate Litigation Program, GEORGETOWN UNI-
VERSITY LAW CENTER, Washington, D.C., for Appellant. Mark
L. Early, Attorney General, Criminal Law Division, OFFICE OF
THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

## OPINION

WILKINSON, Chief Judge:

Douglas Warren, a Virginia prisoner, claims that the Virginia
Parole Board violated the Ex Post Facto Clause when, upon revoking
his parole, it likewise revoked his previously earned good time cred-
its. Because Virginia law bestowed the Parole Board with authority
to revoke good time credits well before Warren committed his origi-
nal offenses and because Warren is challenging a mere policy deci-
sion of the Virginia Parole Board, we affirm the district court's
dismissal of Warren's habeas petition.

## I.

In 1990, Douglas Warren was convicted of two counts of aggra-
vated sexual battery. Warren was sentenced to eight-years imprison-
ment. On February 27, 1995, the Virginia Parole Board released
Warren on mandatory parole pursuant to Va. Code Ann. § 53.1-159
(Michie 1998). By that time, Warren had earned four years and seven
months of good conduct time allowances.

Two sections of the Virginia Code are of particular relevance to
Warren's appeal. The first, § 53.1-165, provides that the Virginia
Parole Board has authority "in its discretion, [to] revoke the parole
and order the reincarceration of the prisoner for the unserved portion
of the term of imprisonment originally imposed upon him." Va. Code
Ann. § 53.1-165 (Michie Supp. 2000). This language was enacted
prior to 1990 when Warren committed his original offenses. The sec-
ond relevant section of the Virginia Code is § 53.1-159. In 1994, the
Virginia legislature amended § 53.1-159 to give the Parole Board
authority to forfeit a mandatory parole violator's good time credits.
The amended statute provides that prisoners who have their parole

revoked may have "to serve the full portion of the term imposed by the sentencing court which was unexpired when the prisoner was released on parole." Va. Code Ann. § 53.1-159 (Michie 1998). In 1995, the Parole Board adopted a new policy that required all mandatory parole violators to serve all of their original sentences without the benefit of their accumulated good time credits.[1]

In 1998, Warren changed his residence and left Virginia without the permission of his probation officer. After a hearing, the Virginia Parole Board determined that Warren had violated his parole. The Virginia Department of Corrections then notified Warren that pursuant to the Parole Board's 1995 policy and Va. Code Ann. § 53.1-159, the Parole Board had "revoked" the four years and seven months of good time credits that Warren had earned prior to his release on mandatory parole.

In 1998, Warren filed a petition for a writ of habeas corpus with the Virginia Supreme Court. Warren claimed that the retrospective forfeiture of his good time credits violated the Ex Post Facto Clause. *See* U.S. Const., art I, § 10, cl. 1. The Supreme Court of Virginia summarily dismissed the petition as frivolous. Having exhausted his state court remedies, Warren filed a habeas petition in federal district court. *See* 28 U.S.C. § 2254 (1994 & Supp. III 1997). The district court dismissed Warren's petition. Warren now appeals.

## II.

The Ex Post Facto Clause bars enactments which, by retroactive application, increase the punishment for a crime that has already been committed. *See Collins v. Youngblood*, 497 U.S. 37, 42 (1990). War-

---

[1]The Board formally recorded its 1995 policy change in a 1997 Policy Manual. The Manual states:

> The Virginia Parole Board shall upon revocation of parole pursuant to 53.1-159, require the prisoner to serve the full portion of the term imposed by the sentencing court which was unexpired when the prisoner was released on parole without regard to good conduct credit.

Virginia Parole Board Policy Manual, Part II.J.4 (July 1997).

ren argues that the Virginia Parole Board's decision to reincarcerate him for the unserved portion of his sentence violated this provision. Although some retroactive changes to parole laws may violate the Ex Post Facto Clause, *see Lynce v. Mathis*, 519 U.S. 433, 445-46 (1997), this is not one of those cases.

## A.

To begin with, the law governing Warren's parole has not changed. Virginia Code § 53.1-165 was in effect at the time Warren committed his original offenses. This provision authorizes the Virginia Parole Board to "order the reincarceration of the prisoner for the unserved portion of the term of imprisonment *originally imposed*." Va. Code Ann. § 53.1-165 (emphasis added). Under the plain terms of § 53.1-165, the Parole Board possessed the authority to reincarcerate Warren for the entire portion of his original sentence.

Warren asserts that § 53.1-165 does not actually provide the Parole Board with authority to revoke good conduct credits. Warren argues that legislative history surrounding the 1994 amendment to § 53.1-159 suggests that it is unclear whether the Board possesses authority to revoke good time credits under § 53.1-165.

This court, however, cannot accept Warren's invitation to adopt a novel interpretation of § 53.1-165. We see little reason to disregard the plain meaning of the statutory text in favor of some snippets of legislative history. Moreover, the Virginia Supreme Court has already addressed Warren's claim and dismissed it as frivolous, presumably because his argument is so at odds with the plain meaning of § 53.1-165. *See Wright v. Angelone*, 151 F.3d 151, 156-57 (4th Cir. 1998) (holding that the Virginia Supreme Court's summary dismissal of petitioner's state habeas claim was an adjudication on the merits). In addition, the Virginia Attorney General issued an opinion in 1986 interpreting § 53.1-165 to bestow such discretion upon the Parole Board.[2] In essence, Warren asks this court to declare that the Virginia

---

[2]The opinion notes that "Section 53.1-165 makes it clear that a parole violator may be required, in the discretion of the Parole Board, to serve the balance of the term of imprisonment to which the court or the jury

Supreme Court and the Virginia Attorney General misinterpreted Virginia law. We are unwilling to do so.

The Virginia Parole Board possessed the authority to revoke Warren's good time credits under both § 53.1-165 and (after 1994) § 53.1-159. Thus, the fact that the Parole Board may have relied on § 53.1-159, instead of § 53.1-165, in revoking Warren's good time credits is of little weight.

B.

Warren argues that even if the Board had authority under § 53.1-165 to revoke his good time credits, the Board's 1995 policy change violated the Ex Post Facto Clause. We disagree. No State shall pass any "ex post facto Law." U.S. Const., art. I, § 10, cl. 1; *see also* U.S. Const., art. I, § 9, cl. 3 (no "ex post facto Law shall be passed"). As the constitutional text makes clear, the ex post facto prohibition applies to "laws." *See United States v. Ellen*, 961 F.2d 462, 465 (4th Cir. 1992); *Prater v. U.S. Parole Comm'n*, 802 F.2d 948, 951 (7th Cir. 1986) (en banc) ("The constitutional prohibition against ex post facto laws . . . is directed to the legislative branch of government rather than to the other branches."). A change in an administrative policy that was in effect at the time of a criminal's underlying offenses does not run afoul of the prohibition against ex post facto laws. *See Ellen*, 961 F.2d at 465; *see also Dufresne v. Baer*, 744 F.2d 1543, 1549-50 (11th Cir. 1984) (holding that the United States Parole Commission's parole guidelines do not have the force of law, and thus the Commission's retrospective amendment of the guidelines did not violate the Ex Post Facto Clause).

Warren argues that the Ex Post Facto Clause applies because the 1995 policy change constituted an exercise of the Board's delegated

---

originally sentenced him." 1985-86 Va. Op. Atty. Gen. 222, 1986 WL 221263. While the Attorney General's opinion is not binding precedent, it is at least as persuasive an interpretation of § 53.1-165 as the legislative history upon which Warren relies. *See City of Virginia Beach v. Virginia Restaurant Assoc.*, 341 S.E.2d 198, 201 (Va. 1986) (holding that while the Virginia Attorney General's opinion is not binding, it is entitled to due consideration in matters of statutory interpretation).

lawmaking authority to adopt "general rules governing the granting of parole." Va. Code Ann. § 53.1-136.1 (Michie Supp. 2000). Such a general delegation of parole authority, however, does not render every particular change in parole policy subject to the Ex Post Facto Clause. The 1995 policy change was a mere "statement[ ] of enforcement policy." *Ellen*, 961 F.2d at 465. The 1997 document memorializing the 1995 policy was entitled "Policy Manual" and did not for ex post facto purposes have the force and effect of law. The Board's 1995 policy simply laid out how the Board intended to exercise its previously existing discretionary authority under statute. In 1995, the Board decided that under existing Virginia law, it would require mandatory parole violators to spend the unserved portions of their prison sentences in jail. This policy change was consistent with the Board's authority under § 53.1-165. Contrary to Warren's claims, the policy change did not remove the Board's discretion. Instead the Board exercised its discretion in favor of requiring parole violators to serve the entire remainder of their original sentences.

## III.

As the Supreme Court has recently recognized, the Ex Post Facto Clause should not be used for "'the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures.' . . . The States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." *Garner v. Jones*, 120 S. Ct. 1362, 1368 (2000) (quoting *California Dept. of Corrections v. Morales*, 514 U.S. 499, 508 (1995)). In this case, the Virginia Parole Board made a policy decision that was within the parameters of existing state law. If the States are to have any freedom in developing optimal parole systems, they must be able to make policy adjustments without raising the specter of constitutional litigation. *See Garner*, 120 S. Ct. at 1368; *Roller v. Gunn*, 107 F.3d 227, 237 (4th Cir. 1997).

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.