**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-6448

DEMMERICK ERIC BROWN, a/k/a Demmerick Brown,

Petitioner - Appellant,

v.

KAREN D. BROWN, Parole Chairman; HAROLD CLARKE, Dir.; WENDY BROWN, Classification Mgr.,

Respondents - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:17-cv-00052-CMH-JFA)

Argued:  March 8, 2022                    Decided:  April 20, 2022

Before GREGORY, Chief Judge, and THACKER and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Chelsey Phelps, Jacqueline K. Winters, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant.  Kevin Michael Gallagher, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia for Appellees.  **ON BRIEF:**  John J. Korzen, Director, Alexandra Meyer, Student Counsel, Rachel Ormand, Student Counsel, Appellate Advocacy Clinic, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant.  Mark R. Herring, Attorney General, K. Scott Miles, Deputy Attorney General, Richard C. Vorhis, Senior Assistant Attorney General, Laura H. Cahill, Assistant Attorney General,

OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In October 2013, the Virginia Parole Board (the "VPB") released Demmerick Brown ("Appellant") from prison to mandatory parole based on Appellant's accumulation of more than 23 years of "good conduct credits" during his 25-year incarceration for several offenses he committed in the late 1980s. At the time of his release, Appellant had seven months and 29 days remaining to serve on his sentences. Although Appellant requested to serve the remainder of his sentences in prison, Virginia law mandated that Appellant be released on parole.

Shortly after his release, Appellant violated the conditions of his parole. Accordingly, the VPB revoked Appellant's parole in August 2015 and, pursuant to its policy requiring persons released on mandatory parole to serve their full sentences upon revocation, also "revoked" the good conduct credits Appellant had earned during his previous incarceration.

Pursuant to 28 U.S.C. § 2254, Appellant challenges the constitutionality of the revocation of his good conduct credits. Specifically, he contends that the VPB's retrospective forfeiture of his good conduct credits violated the Ex Post Facto Clause. Because this court's decision in *Warren v. Baskerville*, 233 F.3d 204 (4th Cir. 2000) is controlling, we affirm the district court's dismissal of Appellant's habeas petition.

I.

Appellant has a lengthy criminal history. Aside from three short stints on parole, he has spent the last 40 years in the custody of the Virginia Department of Corrections ("VDOC") serving sentences for various offenses and parole violations. According to

3

VDOC records dated August 7, 2017, Appellant's total active sentence is 60 years. Before summarizing Appellant's convictions and sentences, we begin with a brief overview of the pertinent laws and policies governing parole in Virginia.

A.

Parole in Virginia

In 1942, Virginia established discretionary parole and the VPB. *See* Va. Code § 53.1-134. In Virginia, discretionary parole is different from mandatory parole, which was established in 1979. *See* Va. Code § 53.1-159. An inmate's discretionary parole eligibility date is determined by statute, *see* Va. Code § 53.1-151, but the VPB retains the authority to deny discretionary parole to inmates who have not "demonstrated maturity and rehabilitation," Va. Code § 53.1-136. In contrast, mandatory parole, outlined in Virginia Code § 53.1-159, strips the VPB of its discretion to deny parole to inmates absent certain exceptions not applicable here. That statute provides, "Every person who is sentenced and committed under the laws of the Commonwealth to the Department of Corrections . . . **shall** be released on parole by the Virginia Parole Board six months prior to his date of final release," Va. Code § 53.1-159 (emphasis supplied). The mandatory release date takes into consideration good conduct credits, *id.*, which accrue at different rates depending on an inmate's conduct during incarceration, Va. Code § 53.1-201.

In 1994, the Virginia General Assembly prospectively abolished parole effective January 1, 1995. Va. Code § 53.1-165.1 ("Any person sentenced to a term of incarceration for a felony offense committed on or after January 1, 1995, shall not be eligible for parole upon that offense."); *see also Mosby v. Commonwealth*, 482 S.E.2d 72, 72 (Va. Ct. App.

4

1997) ("Pursuant to Code § 53.1-165.1, an accused convicted of a felony committed after January 1, 1995 is ineligible for parole."). The Virginia General Assembly also amended the mandatory parole statute to provide that upon revocation of mandatory parole, "[f]inal discharge may be extended to require the prisoner to serve the full portion of the term imposed by the sentencing court which was unexpired when the prisoner was released on parole." Va. Code § 53.1-159. The amendment explicitly gave "the Parole Board authority to forfeit a mandatory parole violator's good time credits," and "[i]n 1995, the Parole Board adopted a new policy that required all mandatory parole violators to serve all of their original sentences without the benefit of their accumulated good time credits." *Warren v. Baskerville*, 233 F.3d 204, 206 (4th Cir. 2000). However, even before the mandatory parole statute was amended in 1994 and the VPB updated its policy to exercise its discretion in 1995, the VPB possessed the authority to require parole violators to serve "the unserved portion of the term of imprisonment originally imposed" pursuant to Virginia Code § 53.1-165, which was enacted in 1982.

In sum, pursuant to Virginia law, persons convicted of certain felony offenses before January 1, 1995, may be released on either discretionary or mandatory parole. And, pursuant to the policy of the VPB since 1995, persons released on mandatory parole who subsequently violate their conditions of release must serve the full portion of the term imposed by the sentencing court without regard to good conduct credits upon revocation.

5

B.

Appellant's Criminal History

Appellant first entered the VDOC in December 1981, when he was sentenced to seven years and six months of imprisonment for committing grand larceny and burglary. In December 1983, Appellant was released from the VDOC on discretionary parole. One month later, in January 1984, Appellant returned to the VDOC after he was arrested for burglary and grand larceny. Appellant was sentenced to a total of six years of active incarceration for the burglary and grand larceny convictions.[1] Appellant was released on discretionary parole for the second time in March 1987. Four months later, in July 1987, while on parole, Appellant committed six new offenses (four robberies, one armed robbery, and use of a firearm in a felony). Appellant was sentenced for these offenses in January 1988 and received six consecutive sentences, which resulted a total of 43.5 years of active incarceration.[2] According to VDOC records, Appellant was eligible to earn good conduct credits during his active incarceration.

Pursuant to Virginia law, Appellant was released on mandatory parole on October 2, 2013. The VPB took Appellant's good conduct credits, which totaled 23 years, 8

---

[1] The Petersburg Circuit Court sentenced Appellant to 12 years in prison (with seven years suspended) for burglary, and to five years in prison (with four years suspended) for grand larceny. Thus, Appellant was sentenced to six years of active incarceration.

[2] The Hampton Circuit Court sentenced Appellant to 15 years in prison for armed robbery and two years in prison for use of a firearm. The Chesterfield Circuit Court sentenced Appellant to five years in prison for robbery. The Henrico Circuit Court sentenced Appellant to 36.5 years in prison for three robberies (with 15 years suspended). Thus, Appellant was sentenced to 43.5 years of active incarceration.

months, and 11 days, into consideration in calculating his "mandatory release date." Va. Code § 53.1-159. Less than six months after his release, in March 2014, Appellant committed grand larceny. He was arrested in November 2014 and sentenced to three years of active incarceration.[3] Pursuant to VPB policy, upon revocation of his mandatory parole, Appellant was also required to serve "all time not physically served on applicable sentences prior to mandatory parole," including the 23 years, 8 months, and 11 days of good conduct credits. J.A. 156.[4] Accordingly, on August 3, 2015, the VPB revoked Appellant's parole and imposed a sentence of 23 years, 8 months, and 11 days, to run consecutively to Appellant's sentence for the 2014 grand larceny.

C.

Procedural History

Four months after the VPB revoked his mandatory parole, Appellant filed a petition for a writ of habeas corpus in the Virginia Supreme Court on December 10, 2015. As relevant in this appeal, Appellant argued in his petition that the VPB Chairman, Karen Brown, violated the Ex Post Facto Clause "when she arbitrarily ignored the law and applied retroactively 1994 and 1995 parole laws to his 1984 and 1987 . . . convictions." J.A. 283. The Virginia Supreme Court dismissed the petition in a one-paragraph order on May 17, 2016:

---

[3] The Chesapeake Circuit Court sentenced Appellant to five years in prison (with two years suspended). Thus, Appellant was sentenced to three years of active incarceration.

[4] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

7

> Upon consideration of the petition for a writ of habeas corpus filed December 10, 2015, the Court finds the petition was not filed within one year after October 2, 2013, when petitioner alleges he was unlawfully released on mandatory parole and the cause of action accrued. Code § 8.01-654(A)(2). Accordingly, the Court is of the opinion that the petition was not timely filed. In addition, the Court is of the opinion that petitioner's claims concerning his good conduct credit and discretionary parole procedures are not cognizable in a petition for writ of habeas corpus. *Carroll v. Johnson*, 278 Va. 683, 694, 685 S.E.2d 647, 652 (2009) (citing *Virginia Parole Board v. Wilkins*, 255 Va. 419, 420-21, 498 S.E.2d 695, 695 (1998)). It is therefore ordered that the petition be dismissed.

J.A. 408.

On May 26, 2016, Appellant asked the Virginia Supreme Court to reconsider its decision because, according to Appellant, his claims accrued on August 3, 2015, not on October 2, 2013. The court denied the petition for reconsideration on October 6, 2016.

On January 12, 2017, Appellant filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Virginia. Like the Virginia Supreme Court, the federal district court dismissed the petition as untimely, reasoning that Appellant's "habeas corpus petition was due to be filed no later than October 3, 2014" because all his "claims involve or derive from his October 2, 2013 release on mandatory parole." *Brown v. Brown*, No. 1:17-CV-52, 2020 WL 1307859, at *4 (E.D. Va. Mar. 18, 2020). The district court alternatively held that even if the accrual date was August 3, 2015, as Appellant contends, "Virginia [Code] § 8.01-654(A)(2) is an adequate and independent bar that precludes federal review of a claim." *Id.* at *6. In making this determination, the district court relied on the plain text of the Virginia Supreme Court order, which "expressly dismissed the state habeas claim as untimely filed pursuant

8

to the state habeas statute of limitations," *id.* at \*7, and two district court cases holding that Virginia Code § 8.01-654(A)(2) is an adequate and independent bar to federal habeas review.

Appellant timely filed a notice of appeal and sought a certificate of appealability. We granted a certificate of appealability on the following four questions, three of which concern whether Appellant's petitions were untimely or otherwise procedurally barred and one of which concerns the merits:

> (1) Whether Brown's state and federal habeas petitions were filed timely, (2) whether Brown's claims are procedurally defaulted, (3) whether the state court declined to consider his claims' merits on the basis of an adequate and independent state procedural rule, and (4) whether Brown has suffered the denial of constitutional rights the state violated.

ECF No. 20.

## II.

We review de novo a district court's denial of habeas relief. *Farabee v. Clarke*, 967 F.3d 380, 388 (4th Cir. 2020). Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the standards by which federal courts review state habeas claims depends on whether the state court adjudicated the claim on the merits, which is a case-specific inquiry. *Valentino v. Clarke*, 972 F.3d 560, 574–76 (4th Cir. 2020); *Winston v. Pearson*, 683 F.3d 489, 496 (4th Cir. 2012). "We must review a state court's resolution of any claims it adjudicated on the merits deferentially, only granting relief if the state court's decision was contrary to . . . clearly established Federal law . . . or based on an unreasonable determination of the facts in light of the evidence presented." *Richardson v. Kornegay*, 3

9

F.4th 687, 695 (4th Cir. 2021) (internal quotation marks omitted). By contrast, "when a state court does not adjudicate a claim on the merits, AEDPA deference is inappropriate and a federal court must review the claim de novo," *Winston*, 683 F.3d at 496, unless the state court found the claim procedurally defaulted, *Richardson*, 3 F.4th at 695.

"[P]rocedural default occurs when a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal." *Mahdi v. Stirling*, 20 F.4th 846, 894 (4th Cir. 2021) (internal quotation marks omitted). We "only review procedurally defaulted claims to determine whether the petitioner has shown that he falls within an exception that permits us to review the claim's merits." *Richardson,* 3 F.4th at 695. Importantly, however, "[a] federal habeas court . . . possesses the jurisdiction to consider a petitioner's constitutional claims that have been procedurally defaulted," *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999), because the threshold "requirement[s] of 28 U.S.C. § 2254 [are] not a jurisdictional concept but simply a flexible matter of comity," *Golphin v. Thomas*, 855 F.3d 278, 284 (4th Cir. 2017) (internal alterations omitted).

With these principles in mind, we now turn to the questions presented in the certificate of appealability.

## III.

## A.

We address the three somewhat overlapping procedural questions together. It is undisputed that the Virginia Supreme Court did not adjudicate Appellant's Ex Post Facto claim on the merits. Therefore, unless the court held that Appellant procedurally defaulted

10

the claim based on an independent and adequate ground, we review the merits de novo. *See Richardson v. Kornegay*, 3 F.4th 687, 695 (4th Cir. 2021) ("[A] state court decision resolving a claim that was not 'adjudicated on the merits' is reviewed de novo . . . unless the state court found the claim procedurally defaulted." (internal citations omitted)).

Appellant contends that even if the Virginia Supreme Court dismissed his Ex Post Facto Clause claim pursuant to the state statute of limitation, Virginia Code § 8.01-654(A)(2), that provision is not an independent and adequate ground for dismissal. "Whether a state procedural rule is adequate to preclude federal review is a question of federal law." *Woodfolk v. Maynard*, 857 F.3d 531, 543 (4th Cir. 2017). A state rule is "adequate" if it is firmly established and regularly followed by the state court in cases that are "procedurally analogous." *Id.* at 543–44. We have not held that that Virginia Code § 8.01-654(A)(2) is generally an independent and adequate state procedural rule, but several of our sister circuits have held that state statutes of limitation applied consistently are independent and adequate bars. *See, e.g.*, *Stojetz v. Ishee*, 892 F.3d 175, 205 (6th Cir. 2018) (holding that the state court's application of the relevant statutes of limitation constituted "independent and adequate bases for denying review of a federal constitutional claim."); *Barksdale v. Lane*, 957 F.2d 379, 382 (7th Cir. 1992) ("Failure to comply with state procedural rules, **such as the statute of limitation** involved in this case, provides an adequate basis for barring federal habeas relief . . . 'if the state court acts in a consistent and principled way.'" (emphasis supplied)).

Appellant argues that the rule is not "adequate" because the accrual date for the revocation of good conduct credits is not "firmly established and regularly followed" in

11

cases that are "procedurally analogous." *Woodfolk*, 857 F.3d at 543–44 (internal quotation marks omitted). Further, Appellant emphasizes that the accrual rule applied here, which effectively requires that persons released to mandatory parole in Virginia file habeas petitions years *before* their good conduct credits are revoked, is quite "freakish." Appellant's Opening Br. at 32. And a state rule applied "freakishly may discriminate against the federal rights asserted and therefore rank as inadequate." *Walker v. Martin*, 562 U.S. 307, 320 (2011) (internal quotation marks omitted) (internal alterations omitted).

In the alternative, Appellant contends that even if Virginia Code § 8.01-654(A)(2) is an independent and adequate bar here, we are permitted to review the merits of his claim because an exception to procedural default applies here. Specifically, Appellant asserts that there is "cause and prejudice" excusing any default and, alternatively, that leaving his claim unresolved would result in a "fundamental miscarriage of justice." *Richardson*, 3 F.4th at 700 (internal quotation marks omitted). Appellant argues there is "cause" because "expecting Brown to have filed a claim after he was released on mandatory parole would base procedural default on a 'novel' claim," or because "something 'external to the defense' impeded Brown, namely the threats Brown received from Respondents Wendy Brown and Karen Brown when he objected to his mandatory parole." Appellant's Opening Br. at 26–27. As to "prejudice," Appellant contends "[h]e suffers prejudice if his ex post facto claims accruing in August 2015 are not addressed solely because he did not raise a novel claim that he should have been allowed to decline mandatory parole within a year of that October 2013 mandatory parole." *Id.* at 27 (emphasis in original).

12

Many of Appellant's arguments are compelling.  Notably, Appellees "do not engage with Brown's contention that even if some aspects of his claims were procedurally defaulted, the procedural default should be excused, as he has established either 'cause and prejudice' for the default or that the default would result in a 'fundamental miscarriage of justice.'"  Appellant's Reply Br. at 6.  Moreover, it remains unclear what claim the Virginia Supreme Court and the district court believe Appellant could have asserted *before* his good conduct credits were revoked on August 3, 2015, to "recover" the credits.  And, in any event, requiring a person recently released on mandatory parole against his wishes after decades of incarceration to use any limited resources available to him to either file a lawsuit or forfeit his constitutional protections is manifestly inequitable.

If Appellant's claim accrued on August 3, 2015, as Appellant reasonably contends, then his state and federal habeas petitions were timely.  This court retains jurisdiction to review the merits of his claim regardless since, "in the habeas context, a procedural default, that is, a critical failure to comply with state procedural law, is not a jurisdictional matter." *Trest v. Cain*, 522 U.S. 87, 89 (1997).  Accordingly, we assume Appellant is correct that *if* his claim is procedurally defaulted, an exception applies, and turn to the merits.

B.

Appellant contends that the VPB violated the Ex Post Facto Clause by retroactively applying "the 1994 amended version of Virginia Code section 53.1-159 concerning mandatory parole and the subsequently revised parole board policy."  Appellant's Opening Br. at 35.  This argument is wholly without merit.  We rejected the precise argument Appellant raises here over twenty years ago, in *Warren v. Baskerville*, 233 F.3d 204 (4th

13

Cir. 2000), and "it is well-settled that a panel of this court is bound by prior precedent from other panels in this circuit absent contrary law from an en banc or Supreme Court decision." *United States v. Seigler*, 990 F.3d 331, 336 n.6 (4th Cir. 2021) (internal quotation marks omitted); *see also McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (en banc) ("A number of cases from this court have stated the basic principle that one panel cannot overrule a decision issued by another panel.").

In *Warren*, we held that even before the mandatory parole statute -- Virginia Code § 53.1-159 -- was amended to give the VPB the authority to forfeit a mandatory parole violator's good conduct credits in 1994, the VPB "possessed the authority to reincarcerate [mandatory parole violators] for the entire portion of [their] original sentence[s]" pursuant to Virginia Code § 53.1-165, which was enacted in 1982 before Appellant was convicted. 233 F.3d at 207. Accordingly, the VPB's 1995 policy change "that required all mandatory parole violators to serve all of their original sentences without the benefit of their accumulated good time credits," *id.* at 206, did not violate the Ex Post Facto Clause because it was merely a "policy decision that was within the parameters of existing state law." *Id.* at 208.

Appellant contends that *Warren* is distinguishable because "[u]nlike the petitioner in *Warren*, who received a single eight-year sentence for two counts of [aggravated sexual] battery, Brown was serving consecutive sentences," Appellant's Reply Br. at 15, and prior to the 1995 policy change, the VPB policy "entitled a prisoner to complete the service of each consecutive sentence one at a time once he had served the required term for that sentence less good time credit," Appellant's Opening Br. at 3; *see also Woodley v. Dep't*

14

*of Corr.*, 74 F. Supp. 2d 623, 629-30 (E.D. Va. 1999) (outlining the difference in the relevant VPB policy before and after 1995).

Appellant's argument may be persuasive if the relevant Virginia statute, rather than the VPB policy, previously treated consecutive sentences as being "complete" for purposes of parole violations. But, in *Warren*, we explicitly held that "the 1995 **policy change** constituted an exercise of the Board's delegated lawmaking authority to adopt 'general rules governing the granting of parole,'" and that "[s]uch a general delegation of parole authority . . . does not render every particular change in parole policy subject to the Ex Post Facto Clause." 233 F.3d at 208 (emphasis supplied); *see also Burnette v. Fahey*, 687 F.3d 171, 184 n.6 (4th Cir. 2012) ("As we observed in *Warren,* the Ex Post Facto Clause, by its text, applies only to 'laws.'").

The crux of Appellant's argument is not that *Warren* is distinguishable, but that it was wrongly decided. *See* Appellant's Reply Br. at 18 (raising an identical argument based on the legislative history to the 1994 amendment of Virginia Code § 53.1-159 that this court rejected in *Warren*). In support, Appellant contends that the *Warren* decision is untenable in the face of *Garner v. Jones*, 529 U.S. 244 (2000), which "foreclosed [a] categorical distinction between a measure with the force of law, on the one hand, and discretionary guidelines, on the other" in the application of the Ex Post Facto Clause. *United States v. Lewis*, 606 F.3d 193, 202 (4th Cir. 2010) (internal quotation marks omitted).

It is well established that "we need not follow precedent by a panel or by the court sitting en banc if the decision rests on authority that subsequently proves untenable

15

considering Supreme Court decisions." *United States v. Banks*, 29 F.4th 168, 175 (4th Cir. 2022) (internal quotation marks omitted). And the timing of our decisions relative to allegedly inconsistent Supreme Court authority is not determinative. *See id.* at 178 ("[A]lthough some of [our] cases were decided **after** [*United States v. Cotton*, 535 U.S. 625 (2002)], we find their reasoning inconsistent with Supreme Court authority and thus decline to follow it." (emphasis supplied)). Thus, the fact that we decided *Warren* after the Supreme Court decided *Garner* does not end our inquiry. However, "[w]e do not lightly presume that the law of the circuit has been overturned, especially where, as here, the Supreme Court opinion and our precedent can be read harmoniously." *Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019) (internal quotation marks omitted). Indeed, "[a]dhering to our longstanding rule that a panel of this court is bound by prior precedent from other panels in this circuit absent contrary law from an en banc or Supreme Court decision demands nothing less." *Id.* (internal quotation marks omitted); *see also McMellon*, 387 F.3d at 332 ("[O]ne panel cannot overrule a decision issued by another panel.").

We would decline to follow *Warren* if its reasoning were inconsistent with Supreme Court authority. But, as we explained in *Burnette v. Fahey*, *Garner* is not untenable with *Warren*'s holding "regarding the applicability of the Ex Post Facto Clause to the Board's policies." 687 F.3d 171, 184 n.6 (4th Cir. 2012). The rationale in *Burnette* -- whether dicta or not -- is persuasive. *See Waddell v. Dep't of Corr.*, 680 F.3d 384, 396 (4th Cir. 2012) (relying on footnote 6 in *Burnette* in denying petitioner's Ex Post Facto claim).

Contrary to Appellant's suggestion otherwise, the *Warren* decision was not based solely on the fact that the relevant VPB policy lacked "the force of law." *Lewis*, 606 F.3d

16

at 202.  In *Warren*, we also emphasized that the 1995 change enacted by the VPB was "a policy decision that was within the parameters of **existing** state law," 233 F.3d at 208 (emphasis supplied), rather than the "retroactive application of a **new** statutory or regulatory rule," *Burnette*, 687 F.3d at 184 n.6 (emphasis supplied); *see also Waddell*, 680 F.3d at 396 (holding that the district court properly denied Waddell's Ex Post Facto claim where the challenged action "did not result from any statutory or regulatory enactment **after** Waddell's first-degree murder offense." (emphasis supplied)).

Because *Warren* is directly on point and is neither distinguishable nor untenable with Supreme Court decisions, Appellant's petition fails on the merits.

IV.

For the foregoing reasons, the district court's dismissal of Appellant's habeas petition is

*AFFIRMED.*

17