**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

No. 23-6932

───────────

ROBERT A. VALLADARES,

> Petitioner - Appellant,

v.

HEATHER L. RAY, Warden,

> Respondent - Appellee.

───────────

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:23-cv-00227-JPB-JPM)

───────────

Argued:  October 30, 2024                          Decided:  February 25, 2025

───────────

Before GREGORY, RICHARDSON, and BENJAMIN, Circuit Judges.

───────────

Reversed and remanded by published opinion.  Judge Gregory wrote the opinion, in which Judge Richardson and Judge Benjamin joined.

───────────

**ARGUED:**  Patricia Louise Richman, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant.  Maximillian Fitzsimmons Nogay, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.  **ON BRIEF:** James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant.  William Ihlenfeld, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

───────────

GREGORY, Circuit Judge:

The First Step Act established a system of mandatory time credits for incarcerated individuals who participate in recidivism reduction programming, with limited exceptions. One such exception, 18 U.S.C. § 3632(d)(4)(D)(lviii), makes ineligible those convicted of specific drug offenses where death resulted. This case addresses whether a conviction of a death-resulting enhancement is required for the exception to apply, or if it is enough that the facts show that a death did result.

We find that the provision only applies to those who were convicted of the death-resulting enhancement element. We therefore reverse the district court's denial of Valladares' petition.

I.

Robert Valladares suffered from a drug addiction that began in high school. In 2020, he distributed fentanyl and fentanyl-related substances to his friend, who had recently left a rehabilitation facility. His friend tragically overdosed that night from mixed drug intoxication.

Valladares was initially charged with three counts in violation of the Controlled Substances Act. *See* J.A. 66–70. Count One of the original Indictment charged him with Distribution of a Controlled Substance Resulting in Death, in violation of 21 U.S.C. § 841(a)(1). J.A. 66. As the Indictment alleged, Valladares had distributed a small quantity of fentanyl and methamphetamine and "death resulted from the use of said substances." *Id.* Counts Two and Three charged him with Possession With Intent to Distribute

2

Controlled Substances on two separate dates, both in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  J.A. 67–68.

The first of the charged provisions, § 841(a)(1), defines "[u]nlawful acts," and the second, § 841(b)(1)(C), explains the "[p]enalties" for sentencing.  21 U.S.C. §§ 841(a), (b).  The charged penalty provision states in relevant part that, as for smaller-scale distributions, "such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life."  21 U.S.C. § 841(b)(1)(C).  It therefore includes two options:  a maximum of twenty years, or, if death results, a mandatory minimum of twenty years.  The latter is referred to as a death-resulting enhancement.

Valladares did not plead guilty to the original Indictment.  Rather, a plea offer was extended and accepted, the original Indictment dismissed, and Valladares pleaded guilty to an Information charging one count of Distribution of Controlled Substances, and two counts of Possession With Intent to Distribute Controlled Substances, all in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  *See* J.A. 71–75 (Information); Plea Agreement, *United States v. Valladares*, 20-cr-00448-ELH (D. Md. Oct. 21, 2021), ECF No. 23 (hereinafter cited as "Plea Agreement").  The key difference between the original Indictment and the Information was the omission of the death-resulting language.  Neither the Information, *see* J.A. 71–73, nor the elements of the offense to which Valladares agreed to plead guilty, *see* Plea Agreement at 1–2, mentioned any death.

The Plea Agreement did, however, include as an attachment a stipulation of facts, which stated that "[t]he undersigned parties stipulate and agree that if this case had

3

proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt." *Id.* at 10. The stipulation of facts included that Valladares' 29 year-old friend overdosed, and that "[t]he Defendant admits that on February 7, 2020, he distributed controlled substances to the victim, and that the death of the victim resulted." *Id.* at 10–11. This stipulation of facts was included in the Probation Office ("Probation")'s Presentence Investigation Report ("PSR"), again under the same disclaimer of what would have been proven at trial. J.A. 106–08.

The Plea Agreement stated that the maximum penalty was twenty years for each of the three counts, with no mandatory minimums. Plea Agreement at 2. The parties stipulated to a total offense level of 35: beginning with a base level offense of 12 due to the small quantity of drugs distributed, an upward departure to level 38 because a death had resulted from the conduct, a 2-level reduction based on his acceptance of responsibility, and a 1-level reduction for his timely acceptance of the plea. *Id.* at 5. The parties also stipulated and agreed to recommend a sentencing range between 132 and 168 months of imprisonment. *Id.* at 6.

In the PSR, Probation acknowledged that the maximum term of imprisonment was twenty years for each count. J.A. 103, 126, 130. Like the Plea Agreement, Probation's PSR placed Valladares at a total offense level of 35. J.A. 109, 126, 130. It explained that given Valladares' criminal history, his Guideline range would be 292 to 365 months of incarceration, and, therefore, recommended a sentence in the middle of that range (324 months). J.A. 126, 130–31. However, it continued, pursuant to the Plea Agreement, "the parties agree a sentence of 132 to 168 months incarceration is the most appropriate sentence

4

in this case," and thus "[i]f the Court . . . adopts the probation officer's guideline calculation . . . , the Court may need to consider giving the defendant an opportunity to withdraw from the guilty plea." J.A. 126–27.

Valladares was ultimately sentenced to 144 months for each count, running concurrently. J.A. 58. This was within the range recommended by the parties in their Plea Agreement.

The district court's Judgment specified the statute under which Valladares was convicted—§ 841(a)(1)—but not the specific penalty statute under which he was sentenced. J.A. 56–57; *see also* J.A. 93. However, the Information to which Valladares pleaded guilty specified § 841(b)(1)(C) for each of the three counts. *See* J.A. 71–73. In the Statement of Reasons within the Judgment, the district court checked a box stating that "[n]o count of conviction carries a mandatory minimum sentence." J.A. 98. The Judgment stated that the Guideline range would be 292 to 395 months, but that the court imposed a sentence below the range, i.e., a variance. J.A. 98–100. The court explained the reason for its variance, referencing that a plea agreement was entered into, and stating that "[t]he . . . drug quantity was not especially significant. However, the drug distribution resulted in the death of defendant's 29-year-old friend. The death, along with the defendant's prior (non-violent) record, significantly enhanced the Guidelines. The defendant was extremely remorseful. And the decedent's father asked the Court to sentence the defendant to 132 months, which corresponded to the bottom of the C plea range." J.A. 100–01. The court also indicated that it adopted the PSR without change. J.A. 98.

5

Later, when denying Valladares' post-conviction motion to vacate, the court stated, "[i]t is true that the actual count of conviction did not charge the death of the victim." Mem. Op. at 21, *United States v. Valladares*, 1:20-cr-00448-ELH (D. Md. Sept. 15, 2023), ECF No. 47.

II.

Valladares was designated to Federal Correctional Institution Hazelton, a medium-security prison in West Virginia. Opening Br. at 7. While there, he sought to earn time credits under the First Step Act ("FSA").

Congress enacted the FSA in 2018 which, among other mechanisms, established a system of time credits and provided eligible inmates the opportunity to earn these credits for participating in evidence-based recidivism reduction programming and productive activities. 18 U.S.C. § 3632(d)(4)(A). Under the FSA, the time credits can be applied toward earlier placement in pre-release custody or supervised release. *Id.* § 3632(d)(4)(C).

The award and computation of time credits is mandatory. *See id.* § 3632(d)(4)(A) ("A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, *shall* earn time credits.") (emphasis added). However, the FSA deems certain prisoners "ineligible to receive time credits" if they are "serving a sentence for a conviction" under any of sixty-eight "provisions of law" enumerated in 18 U.S.C. § 3632(d)(4)(D). Among those provisions listed is:

> Section 401(a) of the Controlled Substances Act (21 U.S.C. 841), relating to manufacturing or distributing a controlled substance in the case of a

6

conviction for an offense described in subparagraph (A), (B), or (C) of subsection (b)(1) of that section for which death or serious bodily injury resulted from the use of such substance.

*Id.* § 3632(d)(4)(D)(lviii).

The Bureau of Prisons ("BOP") told Valladares that he was ineligible to earn time credits because of his conviction under 21 U.S.C. § 841(b)(1)(C) and his friend's death. *See* Opening Br. at 7. Using BOP's administrative remedy process, Valladares challenged his ineligibility classification, J.A. 26, and submitted and appealed remedy requests to escalating levels within BOP, J.A. 26–34; *see also* Opening Br. at 7. Valladares alleges that throughout this process, various BOP officials provided differing information about his eligibility status. *See* J.A. 33, 36–38.

After BOP denied his final administrative appeal, Valladares filed a pro se petition for a writ of habeas corpus in the United States District Court for the Northern District of West Virginia under 28 U.S.C. § 2241, asserting that BOP's actions violated the First Step Act because his conviction did not make him ineligible to earn time credits. J.A. 5. He explained in his petition that he was convicted under 21 U.S.C. § 841(a)(1), and that the "resulting in death" clause was not contained in the Information with which he was charged and to which he pleaded. J.A. 16–17. He continued that "[s]entencing enhancements are not in the list of ineligible offenses under 18 U.S.C. § 3632(d)(4)(D)." J.A. 18.

In response to his petition, the government filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment. J.A. 40. The government emphasized that while the substantive provision applicable to Valladares was 21 U.S.C. § 841(a)(1), the penalty provision he was sentenced under was 21 U.S.C. § 841(b)(1)(C), "and it is without

7

question that a death is associated with his crime of conviction," such that he is precluded from earning time credits. J.A. 50–51.

The district court denied and dismissed Valladares' habeas petition. J.A. 94. It largely adopted the government's position, explaining that while the Judgment "merely indicates [Valladares] was convicted under 21 U.S.C. § 841(a)(1), . . . it is silent as to the applicable sentencing procedure under § 841(B)(1), which is needed to determine eligibility to earn [time credits] under the FSA." J.A. 93. "However," the court continued, "other documents from petitioner's criminal proceeding clarify that he was sentenced under § 841(b)(1)(C) under all Counts": the Information, which "explicitly references § 841(b)(1)(C)," and the PSR, which "unmistakably cites § 841(b)(1)(C) and further notes that a death resulted as a consequence of petitioner's conduct." *Id.* The district court therefore held that Valladares was ineligible to earn time credits under § 3632(d)(4)(D)(lviii) of the FSA. J.A. 92, 94.

Valladares filed a timely notice of appeal of the district court's denial of his petition. J.A. 96. While he initially filed his brief pro se, he has since been represented by counsel. *See* Opening Br. at 10.

### III.

We review the district court's denial of habeas corpus relief de novo. *Waddell v. Dep't of Corr.*, 680 F.3d 384, 392 (4th Cir. 2012). We also review questions of statutory interpretation de novo. *United States v. Turner*, 389 F.3d 111, 119 (4th Cir. 2004).

8

When conducting statutory analysis, we must first determine whether the meaning of the statute is ascertainable through the text alone. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (citing *Est. of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477 (1992)). Employing various grammatical and structural canons of statutory interpretation helps guide our reading of the text. *See, e.g.*, *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 371–76 (1988). "Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Robinson*, 519 U.S. at 340 (internal quotation and citation omitted).

IV.

The question before us on appeal is whether Valladares is ineligible to earn FSA time credits under 18 U.S.C. § 3632(d)(4)(D)(lviii).[1] Because we find that Valladares was not convicted of the death-resulting enhancement, this hinges on whether a conviction of that enhancement is required for (lviii) to apply, even if the facts show that a death did result. As explained below, the unambiguous statutory language establishes that (lviii) only applies when a defendant is convicted of the death-resulting enhancement.

---

[1] Hereinafter referred to as "(lviii)".

9

A.

As an initial matter, Valladares was not convicted of the death-resulting enhancement.[2] The penalty provision with which he was charged, § 841(b)(1)(C), covers both when death results and when it does not. *See* 21 U.S.C. § 841(b)(1)(C). The United States Supreme Court has explicitly held that § 841(b)(1)(C)'s death-resulting enhancement is an element that must be alleged in the charging document and proven beyond a reasonable doubt—or, in this case, pleaded guilty to. *Burrage v. United States*, 571 U.S. 204, 209–10 (2014);[3] *see Alleyne v. United States*, 570 U.S. 99, 102 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000).

The documents in this case clearly show that the death-resulting enhancement was not part of Valladares' conviction. The Information and the Plea Agreement establish that he was not charged with, nor did he plead guilty, to the death-resulting enhancement. *See* J.A. 71–75 (Information does not mention any death); Plea Agreement at 1–2 (elements of the offense to which Valladares pleaded guilty did not mention any death); *see also Shepard v. United States*, 544 U.S. 13, 26 (2005) (look to "the terms of the charging document, [and] the terms of a plea agreement" to determine the elements of the offense). Additionally, the Plea Agreement and Probation's PSR state that the maximum statutory penalty was twenty years for each charge, *see* Plea Agreement at 2; J.A. 126, and the district

---

[2] Valladares argues this position in his brief, *see* Opening Br. at 32–33, to which the government does not directly respond, *see generally* Resp. Br.

[3] This holding applies to the death-resulting enhancement in each of 21 U.S.C. § 841(b)(1)'s subsections: (A), (B), and (C). *See Burrage*, 571 U.S. at 209–10. As § 841(b)(1)(C) was charged here, only that provision is referenced.

court's Judgment states that no count of conviction carried a mandatory minimum sentence, J.A. 98. Because the death-resulting enhancement would have resulted in a minimum sentence of twenty years and maximum of life, this confirms Valladares was not convicted of that enhancement. *See* 21 U.S.C. § 841(b)(1)(C). Finally, the court stated in a post-judgment opinion that "the actual count of conviction did not charge the death of the victim." Mem. Op. at 21, *United States v. Valladares*, 1:20-cr-00448-ELH (D. Md. Sept. 15, 2023), ECF No. 47.

Accordingly, Valladares can only be ineligible under (lviii) if that provision is understood to encompass those who were not convicted of the death-resulting enhancement but whose conduct resulted in death.

B.

To answer this question, we begin with the text itself—and, specifically, the word "conviction." The relevant provisions are as follows:

> A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a *conviction* under any of the following provisions of law: . . .

> Section 401(a) of the Controlled Substances Act (21 U.S.C. 841), relating to manufacturing or distributing a controlled substance in the case of a *conviction* for an offense described in subparagraph (A), (B), or (C) of subsection (b)(1) of that section for which death or serious bodily injury resulted from the use of such substance.

18 U.S.C. §§ 3632(d)(4)(D), 3632(d)(4)(D)(lviii) (emphasis added).

The "Supreme Court has repeatedly analyzed the specific terms in federal statutes to determine whether Congress intended for an element- or fact-based approach to apply," also known as the categorical or circumstance-specific approach. *United States v. Price*, 777 F.3d

11

700, 708 (4th Cir. 2015). For example, it has "interpreted the word[] 'conviction' . . . to indicate that Congress meant . . . to cover a generic offense, implicating the categorical . . . framework[]." *Id.* Therefore, in other contexts, the Court has held that the word "conviction" refers only to what "'the defendant had been convicted of'" and is "not about what the defendant had actually done" or "the facts of the [ ] crimes." *Mathis v. United States*, 579 U.S. 500, 511 (2016) (quoting *Taylor v. United States*, 459 U.S. 575, 600 (1990)). This is in contrast to "a statute contain[ing] 'language that refers to specific circumstances' or conduct," where "the Court has determined that Congress meant to allow the circumstance-specific approach's more searching factual inquiry concerning a[n] [ ] offense." *Price*, 777 F.3d at 708 (quoting *Nijhawan v. Holder*, 557 U.S. 29, 37 (2009)) (cleaned up).

The language of (lviii) indicates that Congress intended for a categorical approach to apply. The word "conviction" is repeated twice in the pertinent FSA provisions, without any language referring to underlying circumstances or conduct, thus barring a broader factual inquiry.

This becomes more salient through the lens of the meaningful variation canon. Under this canon of statutory interpretation, "where a document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." *S.W. Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022) (quoting A. Scalia & B. Garner, Reading Law 170 (2012)) (cleaned up); *see also Barnhart*, 534 U.S. at 452. Thus, Congress' choice to use language like "conviction" in one subsection and "conduct" or "nature" underlying an offense in another subsection requires different readings. *See, e.g., Price*, 777 F.3d at 709.

This variation is present among the FSA's sixty-eight categories of ineligibility. Two categories explicitly reference a broader factual inquiry by stating that ineligibility is triggered "only if the *conduct that led to the conviction* involved a substantial risk of death or serious bodily injury." 18 U.S.C. § 3632(d)(4)(D)(xlvi) (emphasis added); *see also id.* § 3632(d)(4)(D)(lvii). And two categories reference a conviction specifically: the provision at issue, and another that states it applies "only if the *conviction* involved a weapon of mass destruction." 18 U.S.C. § 3632(d)(4)(D)(xviii) (emphasis added). Congress' choice to specify in some categories that "*conduct* that led to the conviction" triggers ineligibility, and in others that only the "*conviction*" triggers ineligibility, must be considered an intentional choice, and the distinction given a practical difference. This distinction supports an unambiguous reading that (lviii) only applies to those convicted of the death-resulting enhancement.

There is another meaningful variation within the FSA. Of the sixty-eight categories of ineligibility, five refer to violations of the Controlled Substances Act. And of those five, where Congress wanted something beyond the conviction—specifically, a sentencing enhancement—to trigger ineligibility, it specified as such. Three apply only "if the sentencing court finds that the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission." 18 U.S.C. §§ 3632(d)(4)(D)(lxv), (lxvii), (lxviii (II)). But the category at issue includes no similar language. It does not state that the provision applies "*if the sentencing court finds* that that death or serious bodily injury resulted;" to the contrary, it requires a *conviction* under § 841(b)(1)(C) that death resulted, not a

13

sentencing court's finding of those facts. *See* 18 U.S.C. § 3632(d)(4)(D)(lviii). Where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart*, 534 U.S. at 452 (citation omitted). Under the FSA, a sentencing enhancement does not trigger ineligibility where not specified.

Overall, the plain language of 18 U.S.C. § 3632(d)(4)(D)(lviii) considered in its statutory context indicates that it only makes ineligible those who were convicted of the death-resulting enhancement element. "Congress well knows how to instruct . . . judges to look into the facts of [ ] crimes: In other statutes, using different language, it has done just that." *Mathis*, 579 U.S. at 511. Even within other provisions in the same section, Congress has directed BOP to consider facts—conduct or sentencing enhancements—in addition to the conviction. But it has not done so here. And that choice must be given meaning. "If textualism is for anyone, it must be for everyone, including those who are incarcerated." *Miles v. Anton*, 42 F.4th 777, 782 (7th Cir. 2022).

All of this leads to the conclusion that ineligibility under (lviii) is limited only to those convicted of the death-resulting enhancement element.[4] BOP may not look to other uncharged facts.

---

[4] As noted in footnote 3, only § 841(b)(1)(C) has been referenced because that was Valladares' charged penalty provision. However, our holding applies to the death-resulting enhancement element under 21 U.S.C. §§ 841(b)(1)(A) and (B) as well.

As Valladares was not convicted of the death-resulting enhancement element, he is not within the scope of (lviii). He is therefore eligible to receive time credits under the First Step Act.

C.

We briefly address why BOP is not owed any deference for its interpretation and application of (lviii) to Valladares.

If a statute is ambiguous, courts "exercise their independent judgment" to determine the "single, best meaning," but do so "with the agency's 'body of experience and informed judgment' . . . at [their] disposal." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400, 402, 412 (2024) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The extent to which a court may look to an agency for guidance depends upon "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Id.* at 388 (quoting *Skidmore*, 323 U.S. at 140).

Here, there is little thoroughness in BOP's consideration of (lviii)'s applicability to Valladares at any level. Throughout the administrative process, BOP deemed Valladares ineligible based on "sentencing monitoring computation data" and a "Technical Reference Manual," J.A. 28, and later stated that he had been "coded [ ] as auto-ineligible," J.A. 31, but it did not at all engage with his well-presented argument that the initial charge "resulting in death" had been dismissed, J.A. 29–30. Before the district court, BOP, through government counsel, did not meaningfully defend its interpretation of (lviii) in response to Valladares' habeas petition. *See* J.A. 42–51. On appeal, it did not respond to

15

Valladares' statutory interpretation arguments at all, nor did it offer any support for its position that (lviii) should encompass uncharged conduct. *See generally* Resp. Br. At oral argument, government counsel repeatedly stated that (lviii) was poorly written, but employed no tools of statutory interpretation to defend BOP's reading of the provision. In a case where the outcome rests entirely on statutory interpretation, this is indefensible, and far from thorough.

Next, the validity of BOP's reasoning is flawed, as was demonstrated above: An analysis of the statute provides a conclusion contrary to that which BOP applied to Valladares.

And finally, BOP's interpretation and application of (lviii) has been wildly inconsistent. This is true even in cases before the same judge within the same district. *Compare Orndorff v. Pullen*, No. 3:22-cv-01637-VAB (D. Conn. Apr. 5, 2023), ECF No. 8 at 1–2,[5] *with Collins v. Stover*, No. 3:24-cv-00282-VAB (D. Conn. Apr. 30, 2024), ECF No. 11 at 1.[6] And this is true even in a filing in another case just one month prior to oral

---

[5] In *Orndorff v. Pullen*, the petitioner filed a habeas petition arguing that BOP incorrectly determined that she was ineligible under (lviii) based on information found in her PSR, although she was convicted of distribution under 21 U.S.C. § 841(b)(1)(C) without the death-resulting enhancement. *Orndorff v. Pullen*, No. 3:22-cv-01637-VAB (D. Conn. Dec. 27, 2022), ECF No. 1 at 6. After the district court issued a show cause order, the government responded by saying that "Petitioner has been designated as eligible to earn FSA credits," and that the habeas petition should therefore be dismissed as moot. *Orndorff v. Pullen*, No. 3:22-cv-01637-VAB (D. Conn. Apr. 5, 2023), ECF No. 8 at 1–2.

[6] In *Collins v. Stover*, the petitioner made the same argument as the petitioner in *Orndorff*, and even cited to that case. *See Collins v. Stover*, No. 3:24-cv-00282-VAB (D. Conn. Feb. 29, 2024), ECF No. 1 at 6, 9–10. But this time, when the district court issued a show cause order, the government responded that "[t]he BOP disagrees and argues that, (Continued)

argument here. *See Madi v. Warden, USP-Atwater*, No. 24-cv-00925-JLT-SKO (E.D. Cal.

Nov. 6, 2024), ECF No. 10 at *2.[7]

---

since there was a good faith basis for BOP to find that the sentencing court found death resulted from the use of the substances as evidenced by the base offense level utilized by that court, it was appropriate to deem her ineligible to earn and apply time credits under the FSA." *Collins v. Stover*, No. 3:24-cv-00282-VAB (D. Conn. Apr. 30, 2024), ECF No. 11 at 1. However, it continued that BOP had since deemed the petitioner eligible to apply for earned FSA time credits and she had already been released from custody. *Id.*

[7] In *Madi v. Warden, USP-Atwater*, the petitioner had been charged by Indictment under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) with distribution of fentanyl to an individual "whose death and serious bodily injury resulted from the use of such substance." *United States v. Madi*, No. 18-cr-00846-PSG (C.D. Cal. Dec. 7, 2018), ECF No. 13. He ultimately pleaded guilty to a Superseding Information charging him with 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) that did not include the death-resulting language. *United States v. Madi*, No. 18-cr-00846-PSG (C.D. Cal. Jan. 12, 2022), ECF Nos. 81, 82.

The petitioner filed a habeas petition explaining that BOP "has denied [him] eligibility for First Step Act Earned Time Credits based on an incorrect interpretation of 18 U.S.C. § 3632(d)(4)(D)(lviii). Petitioner's offense of conviction did not contain death or serious bodily injury, therefore Petitioner is eligible for First Step Act Earned Time Credits." *Madi v. Warden, USP-Atwater*, No. 24-cv-00925-JLT-SKO (E.D. Cal. Aug. 9, 2024), ECF No. 1 at 3.

The government filed a motion to dismiss for mootness, stating that the petitioner "is currently eligible to earn and to apply FSA earned time credits." *Madi v. Warden, USP-Atwater*, No. 24-cv-00925-JLT-SKO (E.D. Cal. Nov. 6, 2024), ECF No. 10 at 2–3. It attached a declaration from the BOP warden stating that "I have been informed by BOP Agency Counsel that, after reviewing Petitioner's petition and after reviewing Petitioner's presentence investigation report and the Sentencing Court's Judgment and Conviction, that, Petitioner should be deemed FSA FTC eligible." *Id.* at 7. This was because "while Petitioner's [PSR] indicates that the parties stipulated that Petitioner committed a separate violation of distribution of fentanyl resulting in death, this stipulation solely relates to calculating Petitioner's base offense level, and not to the sentence of conviction." *Id.* Thus, the warden had updated petitioner's BOP records to reflect his eligibility under the FSA. *Id.*

The district court granted the government's motion to dismiss for mootness. *Madi v. Warden, USP-Atwater*, No. 1:24-CV-00925-JLT-SKO(HC), 2025 WL 241109, at *1 (E.D. Cal. Jan. 17, 2025).

17

Accordingly, even if we were to believe (lviii) was ambiguous, BOP would not be entitled to any deference under *Skidmore*.

V.

Congress passed the First Step Act to reform our criminal legal system and expand opportunities for those who are incarcerated. But instead of granting Valladares the opportunities for which he was eligible, BOP adopted an untenable interpretation of the statute to bar Valladares, and others similarly situated, from earning time credits for participation in recidivism reduction programming. In contravention of Congress' command, BOP's interpretation strips defendants of the incentive to participate in these programs to better themselves and attain the skills they need to be productive members of society. That contradicts the text of the First Step Act.

The exception provided for in 18 U.S.C. § 3632(d)(4)(D)(lviii) only applies to those who have been convicted of the death-resulting enhancement element. Valladares was not convicted of the death-resulting enhancement under 21 U.S.C. § 841(b)(1)(C). Therefore, the (lviii) provision does not apply to Valladares, and he is eligible to earn time credits. The district court's denial of Valladares' petition is

*REVERSED AND REMANDED*.